CITY OF KETTERING, APPELLEE, *v.* LAMAR OUTDOOR ADVERTISING, INC., APPELLANT.

(No. 10144—Decided November 12, 1987.)

*Forde Jay Newberry,* for appellee.
*Rudolph D'Amico,* for appellant.

BROGAN, J. The instant appeal involves the constitutionality of a municipal ordinance which requires that a nonconforming advertising sign or structure damaged in excess of one half of its replacement value be reconstructed in accordance with present existing municipal zoning ordinances.

In the early 1960s, Lamar Advertising of Dayton, Inc. constructed an advertising sign in the city of Kettering, Ohio. In 1971, the area where the sign was located was zoned as an industrial district, to wit, "M."

In 1957, the Ohio Legislature enacted R.C. 713.15, which read (see 127 Ohio Laws 18, 19):

"The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or amendment thereto, may be continued, although such use does not conform with the provisions of such ordinance or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, any future use of such land shall be in conformity with sections 713.01 to 713.15, inclusive, of the Revised Code. *The legislative authority of a municipal corporation shall provide in any zoning ordinance for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning ordinance."* (Emphasis added.)

Pursuant to this statutory authority, the city of Kettering enacted an ordinance which is codified in Section 1163.019 of the Kettering Ordinances and which provides:

"[1163].019 Removal of Nonconforming Advertising Signs and Structures.

"Advertising signs and structures in existence prior to the effective date of this section of the Zoning Code which violate or are otherwise not in conformance with the provisions of this section 1163.01 shall be deemed nonconforming. All nonconforming advertising signs and structures shall be maintained in accordance with section 1163.018. Any nonconforming adver-

tising sign or structure damaged in excess of one-half (1/2) of its replacement value shall be reconstructed to conform to the provisions of this section or be removed. (Ord. 2821-78. Passed 9-26-78.)"

On April 18, 1986, Lamar Outdoor Advertising ("Lamar") was charged in two separate complaints with violating Section 1171.07 of the Codified Ordinances of Kettering by constructing and maintaining a sign in violation of the zoning ordinance and failing to obey an order of the zoning inspector. After a bench trial, Lamar was found guilty as charged in the complaints and fined $100 on each charge.

Lamar has appealed and asserted six assignments of error. In its fourth and fifth assignments, Lamar contends the trial court erred in not dismissing the case because Section 1163.019 violates the provisions of R.C. 713.15 and federal and state constitutional provisions.

It is well-settled that courts will presume the constitutionality of a municipal ordinance and that the party challenging a legislative act of a municipality bears the burden of demonstrating its unconstitutionality. See *Hudson* v. *Albrecht, Inc.* (1984), 9 Ohio St. 3d 69, 71, 9 OBR 273, 275, 458 N.E. 2d 852, 855.

As the constitutional right of the individual to use private property has always been subservient to the public welfare under Section 19, Article I of the Ohio Constitution, such use is subject to the legitimate exercise of local police power pursuant to Sections 3 and 7, Article XVIII of the Ohio Constitution. *Hudson* v. *Albrecht, Inc., supra,* at 72, 9 OBR at 275, 458 N.E. 2d at 855; *Pritz* v. *Messer* (1925), 112 Ohio St. 628, 149 N.E. 30, paragraph one of the syllabus.

A municipal ordinance passed under such authority is valid if it bears a real and substantial relationship to the health, safety, morals or general welfare of the public and is not unreasonable or arbitrary. *Hudson* v. *Albrecht, Inc., supra; Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 4 O.O. 2d 113, 146 N.E. 2d 854, paragraph five of the syllabus; *Akron* v. *Chapman* (1953), 160 Ohio St. 382, 52 O.O. 242, 116 N.E. 2d 697, paragraph one of the syllabus.

The protection of real estate from impairment and destruction of value and the maintenance of the aesthetics of a community are legitimate governmental interests that may be preserved by the reasonable exercise of a municipality's police power where such actions bear a substantial relationship to the general welfare of the public. These interests, therefore, may be properly considered by a legislative body enacting zoning ordinances. *Franchise Developers, Inc.* v. *Cincinnati* (1987), 30 Ohio St. 3d 28, 30 OBR 33, 505 N.E. 2d 966, paragraph two of the syllabus.

In addition, since zoning is a limitation on the individual's right to use his property as he sees fit, zoning laws must be such that the good to the public outweighs the detriment to the individual's rights. *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127, 10 O.O. 2d 85, 163 N.E. 2d 682, paragraph four of the syllabus. Whether such legislation bears a real and substantial relation to the public health, safety, morals or general welfare and whether it is reasonable or arbitrary are questions committed in the first instance to the judgment and determination of the legislative body, and the decisions of the legislative body on those questions will not be disturbed unless they appear to be clearly erroneous. *Curtiss* v. *Cleveland, supra,* at paragraph three of the syllabus; *Pritz* v. *Messer, supra.*

A use of property in existence on the effective date of a new municipal ordinance, which use does not comply

with the new ordinance, is called a "nonconforming use." It is generally considered that an ordinance which attempts to eliminate such nonconforming use is unconstitutional on the basis that it is a taking of property without due process of law. *State, ex rel. Fairmount Center Co.*, v. *Arnold* (1941), 138 Ohio St. 259, 20 O.O. 330, 34 N.E. 2d 777. A municipality's zoning laws, in order to avoid this potential pitfall of unconstitutionality, will ordinarily make provision for the continuation of such nonconforming uses.

Nonconforming uses, like common-law marriages, are not favorites of the law. The reason for their disfavored position is clear: if the segregation of buildings and uses, which is the function of zoning, is valid because of the beneficial results which this brings to the community, to the extent this segregation is not carried out, the value of zoning is diminished and the public is thereby harmed. Nonconforming uses are allowed to exist merely because of the harshness of and the constitutional prohibition against the immediate termination of a use which was legal when the zoning ordinance was enacted. Young, The Regulation and Removal of Nonconforming Uses (1961), 12 Western Res. L. Rev. 681, 686 (hereinafter "Young"). The rights of a nonconforming user are limited, and the clear intent and purpose is to eliminate such nonconforming uses as rapidly as possible. See *Curtiss* v. *Cleveland, supra*, at 130-131, 10 O.O. 2d at 87, 163 N.E. 2d at 685.

"* * * [T]he right to continue a nonconforming use is based upon the concept that one should not be deprived of a substantial investment which existed prior to the enactment of the zoning ordinance. However, when a building has been destroyed, the reason for allowing the continuance of a prior nonconforming use is not applicable to the reconstruction of the non-

conforming use. The investment required to rebuild will be substantially the same, regardless of whether the structure is built in a conforming or a nonconforming manner. Hence, there exists no reason to allow the continuation of this exceptional use." Young, *supra*, at 691.

Evidently, it has been thought that where a nonconforming structure, or a structure associated with a nonconforming use, has been destroyed by casualty to a substantial extent, "it is not unreasonable to compel the owner to conform to [the existing] zoning requirements thereafter. The investment * * * [which the courts and the zoning authorities have hesitated to take away at the date of zoning has been taken away from the property owner] by the accident and not by the ordinance. With the improvement [having been] substantially destroyed, the land on which it is located will presumably have approximately as much value for use in conformity with the ordinance as otherwise, and the public interest in conformity with the ordinance will be served if * * * [the property owner] is not permitted to continue the nonconforming use." *State, ex rel. Covenant Harbor Bible Camp*, v. *Steinke* (1959), 7 Wis. 2d 275, 283, 96 N.W. 2d 356, 361-362.

See, also, *Service Oil Co.* v. *Rhodus* (1972), 179 Colo. 335, 349, 500 P. 2d 807, 814, where the Colorado Supreme Court held that it was not unconstitutional to terminate a nonconforming use that had been destroyed and "abandoned" through no fault of the owner.

If the building or structure is less than completely destroyed, either voluntarily or involuntarily, there may be a closer question as to the right of the municipality to then terminate the nonconforming use. However, ordinances from other jurisdictions dispensing with a nonconforming use have been

upheld when the building has been destroyed in large part and when the building has been destroyed in excess of fifty percent of value and sixty percent of physical proportion. See, *e.g.,* *Baird* v. *Bradley* (1952), 109 Cal. App. 2d 365, 240 P. 2d 1016. "The appraised value or replacement value seems more nearly to approximate the worth of the structure, undamaged." (Footnote omitted.) 1 Anderson, American Law of Zoning, 2d (1976) 492, Section 6.59. See, also, Annotation (1974), 57 A.L.R. 3d 419, at 449-468.

In the first *Curtiss* case, *Curtiss* v. *Cleveland* (1957), 166 Ohio St. 509, 3 O.O. 2d 1, 144 N.E. 2d 177, at paragraph one of the syllabus, the Ohio Supreme Court held that an amendatory municipal ordinance that provided "that repairs to a building and restoration after damage thereto shall not exceed 50 per cent of the valuation of such building unless it is changed to a conforming use, constitutes a valid exercise of the police power of the municipality, where such ordinance has a substantial relation to the public health, safety, morals or general welfare."

Although Section 1163.019 of the Codified Ordinances of Kettering is not part of Kettering's building code, the Supreme Court of Ohio has held that municipalities may require all building repairs and construction to conform to current building codes pursuant to R.C. 3781.11. See *C.D.S., Inc.* v. *Gates Mills* (1986), 26 Ohio St. 3d 166, 169, 26 OBR 142, 146, 497 N.E. 2d 295, 298. Such regulatory legislation, enacted pursuant to a state or municipality's police power, will be enforced so long as such power is not exercised arbitrarily. *Hadacheck* v. *Sebastian* (1915), 239 U.S. 394.

Section 1131.02 of the Codified Ordinances of Kettering provides that the Zoning Ordinance was "enacted for the purpose of promoting public health, safety, morals, comfort and general welfare; [and, *inter alia,*] to conserve and protect property and property values * * *."

The evidence does not disclose in what manner appellant's sign was a nonconforming use. The parties stipulated that the sign was a nonconforming use at the time it sustained windstorm damage in March 1986. The trial court found most credible the testimony of the city's expert, John L. Geiger, a structural engineer, who stated that the sign sustained sixty-one percent damage, exclusive of damage to the sign's columns which were out of plumb. If the columns were included in the estimate of damage, Geiger testified that the sign sustained one-hundred percent damage. The expert further testified that the wind damage was exacerbated by the design of the appellant's sign which design was faulty in that it was too high (the advertising sign was a double-decked sign, *i.e.,* one on top of the other).

Section 1163.01 of the Codified Ordinances of Kettering regulates advertising signs and structures. It regulates the location, size, height, structure, maintenance, and removal of these signs and structures. Specifically, Section 1163.01 prohibits signs from exceeding a height of thirty-six feet and extending above the roof line of any existing building within five hundred feet of the sign. City Exhibit "A" depicts appellant's sign as being well above the height of a nearby building.

Section 1163.01 appears to be a police regulation calculated to maintain the aesthetics of the community. As such, it is a reasonable exercise of the municipality's police power and bears a substantial relationship to the general welfare of the public. *Franchise Developers, Inc.* v. *Cincinnati, supra.*

Section 1163.019 does not on its

face deny appellant the use of its property. It denies appellant the right to rebuild a nonconforming structure which has sustained damage in excess of fifty percent of its replacement value. Appellant must rebuild in compliance with present zoning regulations. We do not find such an ordinance unreasonable or in derogation of the Ohio and United States Constitutions. Nor is Section 1163.019 in conflict with R.C. 713.15. The appellant's fourth and fifth assignments of error are overruled.

In its first assignment, appellant contends the trial court erred in failing to dismiss the charges as there was not a proper allegation of violations of Section 1171.07 of the Codified Ordinances of Kettering.

Section 1171.07 provides:

"No person shall locate, erect, construct, reconstruct, enlarge, change, maintain or use any building or land in violation of any regulation or *provision* of this Zoning Ordinance." (Emphasis added.)

In a bill of particulars, the city specified that appellant had violated Section 1171.07 by failing to remove, and in constructing and maintaining, a billboard which was a nonconforming use and which was damaged in excess of fifty percent of its replacement value, in violation of Section 1163.019. The complaint coupled with the bill of particulars adequately informed the appellant of the charges against it. (Parenthetically, the initial complaint failed to state a criminal charge because it failed to name a person or corporation. Appellant, however, indicated in its request for a bill of particulars that it was also known as Lamar Advertising of Dayton, Inc., a corporation.)

In its second assignment, appellant contends that the trial court erred in not dismissing the complaint because the city had stipulated that appellant's structure and land use were a valid and preexisting nonconforming use, thus negating any violation of the ordinance.

At the beginning of the trial, the city stipulated that appellant owned a sign which was located in an "M" zoning area in the city of Kettering, that the sign was constructed in the early 1960s, that the ordinance alleged to have been violated was enacted in 1978 and that appellant's sign was a preexisting nonconforming use to that ordinance.

The stipulation was made by counsel for the city to obviate proof that appellant's sign was a nonconforming use on March 13, 1986 when it sustained significant wind damage, thus making Section 1163.091 operative. The assignment of error is overruled.

In its third assignment appellant contends the trial court erred in failing to dismiss the case because Section 1163.019 conflicts with Section 1163.018. The latter section provides:

"[1163].018 Maintenance. All advertising signs and structures, where permitted, shall be maintained in a useful state of preservation at all times. Any sign and/or structure which is found to be in a state of disrepair, or for which no signage is provided, shall be removed within thirty (30) days of notification by the Zoning Administrator, unless otherwise corrected."

This ordinance requires all advertising signs to be kept in repair. If the sign is not kept in repair, it must be removed by the owner. Section 1163.019 requires that *nonconforming* advertising signs be removed if they sustain damage in excess of fifty percent of their respective replacement values. *Conforming* signs may be repaired under Section 1163.018. The two sections are not in conflict. The assignment is overruled.

In its sixth assignment of error appellant contends the city failed to prove its case beyond a reasonable

doubt. A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of the offense have been proven beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132. The same principle applies to bench verdicts. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.

The trial court noted in its written decision that it found the city's expert witness more credible on the factual issue of whether appellant's sign was damaged in excess of fifty percent of its replacement value. The record discloses that the city's expert testified at length and gave ample testimony of why he believed appellant's sign had sustained the requisite damage. We cannot substitute our judgment for that of the trial court.

Donald Tate, zoning inspector for the city, testified that he went to the location of appellant's sign on March 13, 1986 and observed the damage to appellant's sign. He stated that he returned a few days later and found a Lamar employee preparing to mount two new sign faces on the sign's columns. Tate stated that he posted a stop-work order and told the Lamar employee to cease the operation and that he complied. Tate also testified that he had sent a certified letter to Jerry Kindle of Lamar Advertising informing him that his company's sign had been damaged in excess of fifty percent of its replacement value and that it was to be removed by no later than April 11, 1986. He stated that he had also sent a copy of the letter to Lamar's attorney, that he had returned to the premises after April 11, 1986, that there had been no change in the sign and that no actions had been taken to remove the sign.

The evidence is undisputed that appellant failed to remove the damaged sign as required by Section 1163.019 and as ordered to do so by the zoning inspector. However, there is no evidence indicating that appellant constructed or maintained the damaged sign after the stop-work order was issued. Therefore, that part of the judgment finding appellant guilty of constructing or maintaining a sign in violation of Section 1171.07 is reversed; in all other respects the judgment is affirmed.

*Judgment accordingly.*

WOLFF and FAIN, JJ., concur.