OPINION
This case involves the oldest billboard in Dayton, Ohio. The billboard is an advertising sign mounted on the side of a commercial building in St. Anne's Hill Historic District. The sign was in place before the City enacted an ordinance prohibiting signs in the district. Therefore, the sign remained there as a lawful nonconforming use.
In the fall of 1997, a minor traffic accident damaged the sign. The building's owner notified Lamar of the damage. Lamar promptly repaired the sign, replacing the sign's original wooden frame with a metal frame of a slimmer width and a different color. The sign was not enlarged or moved from its location.
On April 6, 1998, long after the sign had been repaired, John Calligan, a City of Dayton Zoning Inspector, served Lamar a Notice of Violation on behalf of the Zoning Administrator. The Notice stated that the alteration of a nonconforming use, the sign, caused it to be in conflict with the use limitations of the historic district, which prohibits signs. The Notice required that Lamar either obtain a certificate of appropriateness and a city permit or remove the sign on or before May 6, 1998. The notice also gave Lamar the option of filing an appeal to the City of Dayton Board of Zoning Appeals within thirty days.
Lamar did not appeal the Notice of Violation. The City apparently sent two more Notices of Violation, on May 6, 1998, and December 28, 1999. During the year following the original Notice of Violation, Lamar and the City met and exchanged information on this issue numerous times in hopes of resolving the issue. No resolution was reached. Neither did the City act to remove the sign, and the sign remained.
On July 22, 1999, Lamar filed an application with the City of Dayton Landmarks Commission ("Commission") seeking a "minor" certificate of appropriateness. A Commission officer denied the application on the same day, finding that billboards and signs are not permitted in the district. On August 5, 1999, Lamar filed an application with the Commission for a "major" modification of the sign. The application stated that it was not a modification of the sign, "but regular maintenance of poster panel made necessary by an automobile accident . . . work already complete." After public hearing, the Commission, treating the proposal as an appeal of its officer's denial of the application for a minor certificate of appropriateness, also denied the "major" application, finding that "the proposed design is not in conformance with the Historic District Ordinance."
On October 8, 1999, Lamar filed an appeal of the Commission decision to the Board of Zoning Appeals ("BZA"). The BZA held a public hearing on the issue, during which it came to light that Lamar had not appealed the original Notice of Violation the Zoning Inspector issued.
On November 24, 1999, the BZA issued a decision affirming the Commission's decision to deny alteration of the nonconforming sign. The decision stated that "the proposed design is not in conformance with the Historic District Ordinance, and the advertising sign is no longer a legal nonconforming sign per legal notice of violation dated April 6, 1998, and Historic Preservation Officer denial dated July 22, 1999."
Lamar filed a notice of appeal to the common pleas court pursuant to R.C. Chapter 2506.01. The court found that the Commission and the BZA had "both dismissed [Lamar's] applications because they each decided that the illegality of the sign was established as a matter of law by prior, unappealed, administrative proceedings." The court found that the decisions of the Commission and the BZA met the standard of review in R.C. 2506.04, and therefore it could not disturb those decisions.
Lamar filed timely notice of appeal to this court. It presents two assignments of error, which we will address together.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AFFIRMED THE SUBJECT ADMINISTRATIVE DECISION ON THE GROUND THAT THE ADMINISTRATIVE TRIBUNALS BELOW "DISMISSED" LAMAR'S ADMINISTRATIVE APPEAL FOR LAMAR'S FAILURE TO APPEAL A LEGAL NOTICE OF ZONING VIOLATION DATED APRIL 6, 1998.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT CONCLUDED THAT THE BZA DECISION WAS NOT UNCONSTITUTIONAL, ILLEGAL, ARBITRARY, CAPRICIOUS, UNREASONABLE, OR UNSUPPORTED BY THE PREPONDERANCE OF SUBSTANTIAL, RELIABLE, AND PROBATIVE EVIDENCE.
An appellate court approaches appeals from R.C. Chapter 2506 decisions concerning administrative agency determinations using two distinct standards of review. On questions of fact, our review is limited to whether the trial court abused its discretion. Ohio Dep't of Commerce,Division of Real Estate v. DePugh (1998), 129 Ohio App.3d 255, 261. Anabuse of discretion occurs when the common pleas court's decision isunreasonable, arbitrary, or unconscionable. Pons v. Ohio State Med. Bd.(1993), 66 Ohio St.3d 619, 621. However, regarding questions of law, ourreview is de novo. DePugh, supra.
The trial court affirmed the decision of the BZA because Lamar had nottaken an appeal to the BZA from the original Notice of Violation, whichthe court found acted as a bar to subsequent administrative appeals. Thetrial court stated:
 The court finds that [Lamar] was given the opportunity to appeal its legal notice of violation. The Landmark Commission, and later the BZA, both dismissed [Lamar's] applications because they each decided that the illegality of the sign was established as a matter of law by prior, unappealed administrative proceedings. The decision by the Landmark Commission, which was later affirmed by the BZA, as well within the broad decision-making power granted to the Landmark Commission by the State of Ohio.
The trial court's analysis blends the principles involved in two distinct legal doctrines. One is the doctrine of res judicata. Theother is failure to exhaust administrative remedies. The City arguesthat both apply. Before deciding that question, it is useful todistinguish the two.
Res judicata is a doctrine of judicial preclusion. It states that "[a]valid, final judgment rendered upon the merits bars all subsequentactions based upon any claim arising out of the transaction or occurrencethat was the subject matter of the previous action." Grava v. ParkmanTwp. (1995), 73 Ohio St.3d 379, paragraph one of the syllabus (emphasisadded), 1995-Ohio-331. The prior judgment must be an order or decreeentered on the merits by a court of competent jurisdiction. Norwood v.McDonald (1943), 142 Ohio St. 299. However, res judicata also "appliesto administrative proceedings that are `of a judicial nature and wherethe parties have had an ample opportunity to litigate the issues involvedin the proceeding.'" Grava, supra, at 381, (quoting Set Products, Inc.v. Bainbridge Twp. Bd. of Zoning Appeals (1987), 31 Ohio St.3d 260,paragraph one of the syllabus).
 "Exhaustion of administrative remedies," on the other hand, is adoctrine of judicial abstention. "Prior to seeking court action in anadministrative matter, the party must exhaust the available avenues ofadministrative relief through administrative appeal." Noernberg v. BrookPark (1980), 63 Ohio St.2d 26, 29. In Ohio, the doctrine is a court-maderule of judicial economy. Nemazee v. Mt. Sinai Medical Center (1990),56 Ohio St.3d 109, 111. "The purpose of the doctrine `* * * is to permitan administrative agency to apply its special expertise * * * indeveloping a factual record without premature judicial intervention.'"Id. (citing Southern Ohio Coal Co. v. Donovan (C.A. 6, 1985), 774 F.2d 693,702). Although the Noernberg decision deemed the failure to exhaustadministrative remedies as a jurisdictional defect, the Supreme Court hasmore recently rejected that holding, and we have held likewise. Cooperv. Dayton (1997), 120 Ohio App.3d 34, 38 (citing Jones v. Chagrin Falls(1997), 77 Ohio St.3d 456, 1997-Ohio-253).
The res judicata bar cannot operate to preclude a determination of factor law by the Landmarks Commission relevant to Lamar's application byreason of the prior determination the Zoning Inspector made in his noticeof violation. The notice was not issued in a judicial proceeding, oreven a quasi-judicial administrative proceeding. It was a purelyadministrative determination, made by an administrative officer exparte. Therefore, it lacks the elements that the res judicata barrequires.
The trial court appears to have concluded that res judicata applies,nevertheless, because Lamar failed to avail itself of available judicialor quasi-judicial relief when it didn't appeal the Zoning Inspector'snotice to the BZA. However, a failure to obtain judicial relief that'savailable doesn't amount to judicial relief, or operate as an ordergranting judicial relief which res judicata requires. It might constitute a failure to exhaust administrative remedies, but that matter involves different considerations.
Lamar's failure to appeal the Zoning Inspector's notice to the BZA would justify a court in which relief from the requirements of the notice was subsequently sought to abstain from deciding the claims presented for Lamar's failure to exhaust administrative remedies. However, that would not prevent Lamar from pursuing the alternative course of filing an application to the Landmarks Commission as it did. Neither was the Landmarks Commission precluded by the Zoning Inspector's unappealed notice from considering Lamar's application, as the Commission and the trial court concluded that it was. Two considerations lead us to that conclusion.
First, the City is mandated by R.C. 713.15 to enact a zoning ordinance permitting the "restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the ordinance" within two years after a nonconforming use is voluntarily discontinued. R.C.G.O. Section 150.255, which provides for applications to the Landmarks Commission for certificates of appropriateness for those purposes, is consistent with the mandate of the statute, which was adopted to support the due process protections which nonconforming uses involve. See 10 Ohio Jurisprudence 3d, Buildings, Zoning, and Land Controls, Section 150. It is counter intuitive to permit the City, through its Zoning Inspector, to then make that procedure unavailable by declaring that a particular restoration or repair deprives the property concerned of the nonconforming use status to which the procedure applies.
Second, R.C.G.O. Section 150.440 provides that appeals to the BZA must be taken within thirty days after issuance of a zoning notice. The notice that the Zoning Inspector issued to Lamar adopts a like time limit for compliance should an appeal not be taken. One form of compliance the Zoning Inspector's notice offered was for Lamar to obtain a certificate of appropriateness from the Landmarks Commission. However, the Zoning Inspector is not authorized to establish time limits for compliance with his orders. To permit that in this instance would allow the Zoning Inspector to arbitrarily set time limits for the procedures of another City agency, the Landmarks Commission. Therefore, Lamar could comply with the notice by filing an application for a certificate of appropriateness within a reasonable time.
Lamar filed its application with the Landmarks Commission on July 22, 1999. That date was more than one year after the first notice was served on Lamar, but negotiations between the City and Lamar had continued almost to that point. It was also within the two-year term for such procedures that R.C. 713.15 requires. Therefore, it was reasonable.
The City argues that our prior holdings in City of Dayton v. Lowe(April 24, 1998), Montgomery App. No. 16651, unreported, and City ofDayton v. Fuhrman (August 30, 1990), Montgomery App. No. 11845,unreported, support the trial court's finding that Lamar's failure toappeal the Zoning Inspector's notice to the BZA renders its sign anon-conforming use as a matter of law. In Lowe and Furhman, we held that a property owner's failure to appeal a notice declaring his property a nuisance relieved the prosecution in a subsequent criminal proceeding in which the owner was charged with maintaining a nuisance from having to independently prove that the property was a nuisance. The same doesn't apply here. As we have found, Lamar followed an alternative course of compliance with the inspector's notice by seeking a certificate of appropriateness from the Landmarks Commission. Its failure to appeal to the BZA, therefore, does not operate to render its sign a non-conforming use, or bar the Landmarks Commission from granting the relief that Lamar sought.
The City also relies on our decision in City of Kettering v. LamarOutdoor Advertising, Inc. (1987), 38 Ohio App.3d 16, wherein, we approvedzoning ordinance requirements similar to those here. In both instances,modifications of a nonconforming use had destroyed its status andrequired compliance with existing ordinances. In Kettering, however,compliance merely required moving the sign to a nearby location. Here,compliance would require removal of the sign entirely. Such a regulatorytaking, being permanent and complete, requires just compensation pursuantto the Fifth Amendment to the Constitution of the United States. SeeLucas v. South Carolina Costal Council (1992), 505 U.S. 1003. The City has not offered compensation for Lamar's sign, but neither has Lamar instituted an "inverse condemnation" action to obtain compensation. That may be because the City has not removed the sign or instituted proceedings to remove it.
The Landmarks Commission denied the application for a major certificate of appropriateness as a finding that "the proposed design is not in conformance with the Historic District Ordinance." The BZA's decision affirming the Commission found that the sign's nonconforming use status was extinguished because the Zoning Inspector's Notice was not appealed. The BZA decision was based on an error of law, because the Zoning Inspector did not have the authority to set time constraints on Lamar's compliance with the Notice, and Lamar complied when it filed an application with the Landmarks Commission. Therefore, the trial court's affirmance of the BZA on the ground that Lamar failed to exhaust its administrative remedies when it didn't appeal the April 6, 1998, Notice of Violation was also in error.
The assignments of error are sustained.
 Conclusion The decision of the trial court is reversed, and the cause remanded tothe BZA to address Lamar's appeal of the Commission's denial of the issueof Lamar's application for a certificate of appropriateness in a mannerconsistent with this opinion.
BROGAN, J. and YOUNG, J., concur.