OPINION
{¶ 1} Walt's Auto, Inc. ("Walt's") appeals from a judgment of the Clark County Court of Common Pleas, which upheld a decision of the Ohio Motor Vehicle Salvage Dealers' Licensing Board ("Salvage Dealers' Licensing Board") that it was in violation of a regulation requiring its property to be shielded from the view of U.S. Route 68 by a fence or a living hedge.
 {¶ 2} Walt's has operated as a salvage yard in Springfield Township for several decades. In 1994, Walt's received a notice from the Salvage Dealers' Licensing Board that it was required to screen its salvage business from the view of U.S. Route 68. Walt's had apparently received another notice to this effect several years earlier but had failed to comply. Walt's requested a hearing, which was held on April 12, 1995. Following the hearing, the Salvage Dealers' Licensing Board concluded that Walt's was in violation of Ohio Adm. Code 4501:1-4-04(A)(2) and told Walt's to remedy the problem by October 1995 under threat of revocation of its license. Walt's appealed from this decision to the Clark County Court of Common Pleas. The trial court affirmed the Salvage Dealers' Licensing Board's decision in February 2002.
 {¶ 3} Walt's raises two assignments of error on appeal.
 {¶ 4} "I. THE COURT OF COMMON PLEAS ERRED IN CONCLUDING THAT WALT'S AUTO IS NOT EXEMPT FROM THE SHIELDING REQUIREMENT OF O.A.C.4501:1-4-04 BECAUSE WALT'S AUTO IS LOCATED IN AN INDUSTRIALLY ZONED AREA."
 {¶ 5} Walt's argues that it is not required to erect a fence around its property because it is in an industrial area where fencing is not required and because its use of the property as a salvage yard predates Springfield Township's zoning regulations. Walt's also claims that requiring fencing around salvage yards in industrial areas is inconsistent with Congress' intent in enacting the United States Highway Beautification Act of 1965, Section 136, Title 23, U.S.Code.
 {¶ 6} Ohio Adm. Code 4501:1-4-04(A)(2) provides:
 {¶ 7} "(A) The characteristics of the facilities used by motor vehicle salvage dealers, salvage motor vehicle pools and salvage motor vehicle auctions, shall consist of the following:
 {¶ 8} "* * *
 {¶ 9} "(2) Such area shall be shielded by a fence meeting the following requirements, except where relieved by zoning rules:
 {¶ 10} "(a) Having a minimum height of six feet with a maximum of ten feet in height.
 {¶ 11} "(b) Such fencing shall shield the premises from ordinary view.
 {¶ 12} "(c) Exceptions to this paragraph must be granted in writing, by the registrar of motor vehicles, provided, however, that no exception shall be granted in contravention of the United States Highway Beautification Act of 1965, as amended.
 {¶ 13} "(3) A living hedge of equal height and sufficient density to prevent view of the premises may be substituted for the fence. A living hedge may exceed the ten-foot height limitation." (Emphasis added.)
 {¶ 14} These rules embody a mandate set forth at R.C. 4738.11 for the Salvage Dealers' Licensing Board to adopt rules prescribing the physical characteristics of facilities used by salvage operations. R.C.4738.11 also requires that salvage operations be fenced or otherwise screened "to at least the extent required for junk yards by [R.C.] sections 4737.07 and 4737.09."
 {¶ 15} Walt's claims that it is "relieved by zoning rules" from any fencing requirement because it operates as a prior nonconforming use of the premises. In our view, this assertion is overbroad. Owners are permitted to continue a nonconforming use based on the recognition that one should not be deprived of a substantial investment that existed prior to the enactment of a zoning resolution. Beck v. Springfield Twp. Bd. ofZoning Appeals (1993), 88 Ohio App.3d 443, 446, citing Curtiss v.Cleveland (1959), 170 Ohio St. 127, 132. However, nonconforming uses are not favorites of the law. Kettering v. Lamar Outdoor Advertising, Inc.
(1987), 38 Ohio App.3d 16, 18. Local governments may prohibit the expansion or substantial alteration of a nonconforming use in an attempt to eradicate that use, and they may regulate nonconforming uses to the point that they "wither and die." Beck, 88 Ohio App.3d at 446. (Citations omitted). Accordingly, the fact that Walt's salvage operation is allowed to continue in its original location does not mean that the business is free from all regulation of its operation. Despite its existence as a prior nonconforming use, Walt's is still required to comply with the rules applicable to all salvage yards, such as requirements for fencing and a license. Walt's argument that its prior nonconforming use status frees it from general requirements relating to how salvage operations must be maintained is without merit. Its nonconforming status only freed Walt's of regulations that would have prevented its operation on the site in question.
 {¶ 16} Moreover, in our view, the fact that Springfield Township's zoning requirements do not require a fence around Walt's property does not affirmatively "relieve" it from the state's requirement that salvage yards be fenced so as to be shielded from view. The Ohio Administrative Code's reference to being "relieved" of an obligation to shield the property with a fence implies an affirmative act on the part of local officials, rather than a failure to impose such a requirement, as Walt's contends. The Springfield Township zoning regulations do not relieve Walt's of the obligation imposed under Ohio Adm. Code 4501:1-4-04(A)(2) to erect a fence.
 {¶ 17} Walt's also relies on R.C. 4737.07 in support of its argument. R.C. 4737.07 relieves a junk yard of the requirement to erect a fence if it is located in an industrial area. While we recognize that a junk yard at Walt's location would not be required to erect a fence because of its industrial zoning, we fail to see how this fact is relevant to Walt's situation. Walt's is not a junk yard, and R.C. 4738.11, which governs salvage yards, does not adopt the provisions applicable to junk yards. Rather, R.C. 4738.11 requires fencing for salvage yards "to at least the extent required for junk yards." It is clear that the Salvage Dealers' Licensing Board was free to adopt more stringent fencing requirements for salvage yards than for junk yards, as it did. There is no basis upon which to apply the lesser standard of a junk yard to Walt's salvage yard.
 {¶ 18} Finally, we note that Ohio Adm. Code 4501:1-4-04(2)(c) states that exceptions to the fencing requirement must be granted in writing by the registrar of motor vehicles. As far as we can tell, Walt's has never requested such an exception.
 {¶ 19} Walt's arguments that it is exempt from the fencing requirement because it is a prior nonconforming use and because it is located in an industrial area are without merit. The first assignment of error is overruled.
 {¶ 20} "II. THE COURT OF COMMON PLEAS ERRED IN CONCLUDING THAT APPLICATION OF STRICTER SHIELDING REQUIREMENTS TO MOTOR VEHICLE SALVAGE YARDS THAN TO JUNK YARDS IS NOT A VIOLATION OF EQUAL PROTECTION."
 {¶ 21} Walt's argues that the differing fencing requirements for salvage yards and junk yards under Ohio law violate the Equal Protection Clause because similarly situated businesses are treated differently. It also notes that federal law does not distinguish between a junk yard and a salvage yard, and it asserts that there is no rational basis for such a distinction.
 {¶ 22} The Equal Protection Clause requires that an administrative regulation, at a minimum, further a legitimate government interest.Brooks v. Ohio Bd. of Embalmers Funeral Directors (1990),69 Ohio App.3d 568, 573. "If the regulation bears any rational relationship to a legitimate government interest, the regulation must be upheld." Id. "The State `need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked.'" State ex rel. Vana v. Maple Hts. City Council (1990),54 Ohio St.3d 91, 94, citing Clements v. Fashing (1982), 457 U.S. 957,969-970, 102 S.Ct. 2836.
 {¶ 23} R.C. 4738.11's requirement that salvage yards be fenced bears a rational relationship to a legitimate government interest of screening unsightly properties from the view of passing motorists. The requirement does not violate the Equal Protection Clause simply because the state could have gone further by imposing the requirement on other types of properties as well. Because the regulation bears a rational relationship to a legitimate government interest, it must be upheld.
 {¶ 24} The second assignment of error is overruled.
 {¶ 25} The judgment of the trial court will be affirmed.
FAIN, J., concurs.