[Cite as *Janson v. John Beninato Zoning Inspector*, 2016-Ohio-2796.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| RUSSELL A. JANSON, | : | **O P I N I O N** |
| Appellant, | : | |
| - vs - | : | **CASE NOS. 2015-A-0039 and 2015-A-0040** |
| JOHN BENINATO, ZONING, INSPECTOR, et al., | : | |
| | : | |
| Appellees, | : | |
| | : | |
| JOHN BENINATO, AUSTINBURG TOWNSHIP ZOING INSPECTOR, | : | |
| Plaintiff-Appellee, | : | |
| RUSSELL A. JANSON, | : | |
| Defendant-Appellant, | : | |

Administrative Appeals from the Ashtabula County Court of Common Pleas, Case Nos. 2013 CV 609 and 2014 CV 337.

Judgment:  Affirmed.

*Alexandria R. Heinonen*, Smith & Miller, 36 West Jefferson Street, Jefferson, OH 44047 (For Appellant, Defendant-Appellant).

*Abraham Cantor*, Johnnycake Commons, 9930 Johnnycake Ridge Road, Suite #4-F, Concord, OH  44060 (For Appellees, Plaintiff-Appellee).


THOMAS R. WRIGHT, J.

{¶1} These consolidated appeals are from a consolidated judgment rendered in two separate but related proceedings. The trial court upheld an administrative ruling and granted a permanent injunction prohibiting appellant, Russell A. Janson, from operating his trucking-excavation business on the subject property. Appellant maintains that the trial court improperly found that he "voluntarily" stopped using the land for two years. For the following reasons, the trial court's judgment is affirmed.

{¶2} The subject matter of the underlying cases concerns the permissible use of two parcels of land at 1670 Mill Creek Road, Austinburg Township, Ohio. Appellant's grandfather, Peter Janson, bought the property in December 1955. At that time, Peter owned a number of farms in the general vicinity, on which he ran two businesses. Over the ensuing years, Peter primarily used the Mill Creek land for raising dairy cows and crops. However, he also used the property as a place to store and sell feed, gravel, fertilizer, and lime to other farmers and homeowners in the area. In conjunction with the latter uses, Peter operated and housed heavy-duty trucks on the property.

{¶3} As of 1955, Austinburg Township did not have a zoning resolution. One year later, a resolution was enacted, under which the Janson Mill Creek property was classified as residential. In the early 1990's, the zoning resolution was amended, and the subject property was reclassified as recreational-commercial. Under both of the classifications, a trucking-excavation business was not permissible. Thus, to the extent that Peter Janson and his progeny used the Mill Creek property as a home base for a trucking-excavation company, it has been a noncomforming use since 1956.

{¶4} Immediately after purchasing the Mill Creek property, Peter permitted his son Robert, appellant's father, to build a home on the land and raise his family there. In

2

this respect, Robert was initially responsible for running his father's businesses from the Mill Creek property. However, in 1967, Robert purchased the property from his father and formed his own business. When they were old enough, appellant and two of his brothers began to work in the family business.

{¶5} Although Robert's business was similar in nature to his father's, it grew in size. During the 1970's, Robert bought a number of Mack tri-axle trucks to pick-up and deliver gravel, lime and limestone. Furthermore, to the extent that land excavation became a bigger part of the business, he began to acquire more excavation equipment, such as bulldozers. In contrast, the "farming" aspect of the business decreased through the years. By the 1990's, although some of the land was still used for crops, the "dairy" aspect had been phased out.

{¶6} In 1979, appellant married and moved into a home a short distance from his parents' residence on Mill Creek Road. However, he continued to work in the trucking-excavation aspect of his father's business throughout his adult life.

{¶7} In June 1992, Robert and his wife, Patsy Jo, formed the Robert N. Janson Revocable Trust. Title to the Mill Creek property and homestead was transferred to the trust. In January 1998, the underlying trust agreement was amended. One month later, Robert died, and Patsy Jo became the successor trustee. Three years later, the Robert N. Janson Family Trust was created, and title to the Mill Creek property was transferred to this entity. Patsy Jo continued as the sole trustee.

{¶8} Within two years of his father's death, appellant became the sole operator of the trucking-excavation aspect of the family business. As to appellant's two brothers, one took over another aspect of the business, while the second moved from the area.

3

Appellant continued to house and operate the trucking-excavation business at the Mill Creek property. According to him, he paid rent to his mother and the trust.

{¶9} In February 2009, Patsy Jo died. Under the terms of the trust, appellant and his two brothers became the trustees and a majority vote of the three trustees would control.

{¶10} Within three months of their mother's death, appellant's two brothers voted to require Robert to pay $1,800 per month in rent to keep the trucking-excavation business on the Mill Creek property. Allegedly, the rent was necessary to pay the insurance and taxes on the land. When appellant failed to pay, the two brothers, acting through the trust, filed an eviction case against him, claiming that he had no right to retain possession of the premises. This proceeding resulted in an agreed judgment, under which appellant was obligated to vacate the property.

{¶11} Pursuant to the agreed judgment, appellant was given a period of time to have the property appraised. When this process was complete, appellant made an offer to purchase, but the two brothers rejected the offer as too low. As a result, in November 2009, appellant removed all vehicles, equipment, and supplies associated with the business from the Mill Creek property, and began running the business from a new location in Austinburg Township. There was no business activity at the Mill Creek property during the next 34 months.

{¶12} The three brothers continued to disagree as to the disposition of the trust assets. This led to the filing of a separate legal action concerning the operation of the trust in the state of Florida. As part of this proceeding, a special trustee was appointed to take over the trust. In order to pay debts pending against the Mill Creek property, the

4

special trustee decided to sell that property at auction. Appellant was the highest bidder, who took possession of, and title to, the property in September 2012.

{¶13} Appellant immediately moved his vehicles and equipment back to the Mill Creek property, resuming operation of the trucking-excavation business there. Within a few months, the township zoning inspector, John Beninato, received complaints about the number of trucks on Mill Creek Road and the noise and odors emanating from the property. In May 2013, Beninato sent a letter informing appellant that he could not use the Mill Creek property to house a commercial business. Beninato stated that his research into the property's history indicated that it was not used for a trucking-excavation business prior to the enactment of the first zoning resolution in 1956. Thus, according to Beninato, the business was not a nonconforming use that was exempted from the zoning resolution.

{¶14} Appellant appealed Inspector Beninato's determination to the Austinburg Township Board of Zoning Appeals, requesting a permit for a nonconforming use. After conducting a public hearing at which appellant was afforded an opportunity to present evidence, the zoning board rendered a written decision upholding the conclusion that appellant was not entitled to operate a trucking-excavation business on the Mill Creek property. The board found there was no evidence that a trucking-excavation business existed on the property prior to 1956. The board further found that there was a two-year period in which appellant did not use the land to house his business.

{¶15} In August 2013, appellant filed an administrative appeal of the foregoing decision in the Ashtabula County Court of Common Pleas. Nine months later, while the administrative appeal was still pending, Inspector Beninato instituted a separate action

in the same court for a permanent injunction, seeking to enjoin appellant from operating his business on the property. Within forty-five days of filing the injunction complaint, the trial court held two evidentiary hearings. Following the second hearing, the parties stipulated that the injunction action and the administrative appeal would be consolidated for all purposes, and that the trial court could consider the transcript of the board proceeding in conjunction with the evidence presented during the two hearings.

{¶16} In its final judgment for both cases, the trial court first found that members of appellant's family had operated a commercial trucking business on the property since 1955, before the township's first zoning resolution was enacted; therefore, appellant's business had been a nonconforming use. Nevertheless, the trial court also found that the nonconforming use was discontinued for more than two years; thus, appellant was statutorily foreclosed from resuming operation on the property. The trial court ultimately affirmed the zoning board's decision and granted the injunction against appellant.

{¶17} In appealing, appellant asserts two assignments of error:

{¶18} "[1.] The trial court erred by granting an injunction against Russell Janson enjoining him from operating his trucking business because the trucking business pre-dated the 1956 Austinburg Zoning Code and was lawful at the time that it began.

{¶19} "[2.] The trial court erred by finding that Russell Janson voluntarily discontinued the use of the Mill Creek Road property as a trucking business."

{¶20} Appellant's first assignment addresses whether his trucking-excavation business constitutes a nonconforming use that must be allowed to continue. As previously stated, the zoning board ruled against appellant finding that the nonconforming activity had not begun until after 1955. However, the trial court found to

6

the contrary:

{¶21} "The Court further finds that members of the Janson family, starting with Peter E. Janson, Sr., have farmed this property and operated a commercial trucking business from that location since 1955."

{¶22} The trial court's decision to affirm the zoning board and grant a permanent injunction was based solely upon its conclusion that the nonconforming use had been discontinued for over two years. Thus, to the extent the sole basis for appellant's first assignment was decided in his favor, this assignment is without merit.

{¶23} Appellant's second assignment challenges the injunction ruling based on the conclusion that the nonconforming use was discontinued for approximately 34 months. He argues that the trial court's ruling is flawed because the evidence clearly shows that he did not voluntarily stop using the property for his business. He notes that it was the vote of his two brothers to evict him that forced his abandonment of the land. Similarly, appellant contends that the fact that the property was not used for any business for two years should not be held against him because it was never his intention to cease operations on the subject property.

{¶24} "A nonconforming use is a lawful use of property in existence at the time of enactment of a zoning resolution which does not conform to the regulations under the new resolution. *Kettering v. Lamar Outdoor Advertising, Inc.* (1987), 38 Ohio App.3d 16, 17, 525 N.E.2d 836. A nonconforming use is allowed to exist because of the constitutional prohibitions against immediate termination of the use. Id. at 18. However, nonconforming uses are not favorites of the law. Id. See also, *Ghindia v. Monus* (June 14, 1996), 11th Dist. No. 95-T-5326, 1996 Ohio App. LEXIS 2465, at *4.

7

Therefore, nonconforming uses 'may be regulated, and even girded to the point that they wither and die.' *Columbus v. Union Cemetery Assn.* (1976), 45 Ohio St.2d 47, 49, 74 Ohio Op.2d 79, 341 N.E.2d 298.  Because of the disfavored status of a nonconforming use, 'the denial of the right to resume a nonconforming use after a period of nonuse has been upheld, as well as the denial of the right to extend or enlarge an existing nonconforming use.' *Akron v. Chapman* (1953), 160 Ohio St. 382, 386-387, 116 N.E.2d 697.

{¶25} "A person retains the right to continue a specific nonconforming use of his or her property as long as that use is not voluntarily discontinued for a period of two years.  R.C. 519.19.  *Mentor v. Brettrager*, 11th Dist. No. 2000-L-050, 2002-Ohio-1955, 2002 Ohio App. LEXIS 1902.  The discontinuance of a nonconforming use will be considered to be voluntary only if the property owner intended to abandon the use. *Recreational Facilities, Inc. v. Hambden Twp. Bd. of Trustees* (June 30, 1995), 11th Dist. No. 93-G-1819, 1995 Ohio App. LEXIS 2804.  The party claiming the use was voluntarily discontinued bears the burden, by a preponderance of the evidence, of demonstrating that fact to the trial court.  *Bd. of Twp. Trustees of Washington Twp. v. Grogoza* (Feb. 8, 2001), 5th Dist. No. 00-CA46-2, 2001 Ohio App. LEXIS 595." *Aluminum Smelting & Ref. Co. v. Denmark Twp. Zoning Bd. of Zoning Appeals*, 11th Dist. Ashtabula No. 2001-A-0050, 2002-Ohio-6690, ¶14-15.

{¶26} In our case, the facts regarding the discontinuance of the nonconforming use are not in dispute.  After appellant's mother died in 2009, the three brothers became the trustees of the family trust.  When the brothers could not reach an agreement as to rent, the other two trustees brought an eviction proceeding.  That action ended in an

8

agreed judgment in which appellant agreed to vacate the property once the value of the land had been appraised. Although appellant made an offer to buy the property, his brothers rejected the offer, and appellant moved his business to another location.

{¶27} In regard to the "discontinuance" issue, appellant argues that it is his intent that is controlling in determining whether termination of the nonconforming use was voluntary. Concerning this point, he emphasizes that: (1) he was the sole owner of the trucking-excavation business; and (2) he was both a trustee and beneficiary under the family trust. Yet, in making this point, appellant concedes that the trust was the sole owner of the Mill Creek property at that time.

{¶28} The trustee holds legal title to the items held in the trust; a beneficiary's interest is limited to equitable title. *Goralsky v. Taylor*, 59 Ohio St.3d 197, 198, 571 N.E.2d 720 (1991); *May v. Lubinski*, 9th Dist. Summit No. 26528, 2013-Ohio-2173, ¶46. In this case, the trust agreement provides that a majority vote of the three trustees is controlling as to the actions of the trust. Thus, it is appellant's two brothers' intent that controls whether the discontinuance of the nonconforming use was voluntary.

{¶29} There is no dispute that appellant's two brothers voted to evict him and the trucking-excavating business from the Mill Creek property when appellant failed to pay the requested rent. Furthermore, there is no dispute that the brothers did not allow another trucking-excavation business to use the land during the thirty months after the eviction; i.e., the land was completely vacant. From this, the trial court could readily find that the brothers, as trustees who controlled ownership of the property, intended to discontinue the prior nonconforming use.

{¶30} The trial court found that appellant had a voluntary intention to discontinue

9

the nonconforming use because he chose not to pay the rent requested by his brothers. However, this finding is superfluous. Since appellant was a minority trustee, his intention as to the use of the property was meaningless.

{¶31} To be entitled to injunctive relief under R.C. 519.24, the zoning inspector only needs to prove, by clear and convincing evidence, that the present use of the land is not permissible under the zoning resolution. *Bd. of Suffield Twp. Trustees v. Rufener*, 11th Dist. Portage No. 2010-P-0061, 2011-Ohio-3294, ¶27. As to an administrative appeal from a zoning board's decision, the common pleas court must affirm the ruling unless it is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of the substantial, reliable, and probative evidence. *Aluminum Smelting*, 2002-Ohio-6690, at ¶13.

{¶32} For the foregoing reasons, the evidence supports a finding that the prior nonconforming use was voluntarily discontinued for over two years. As such, the trial court did not err in both affirming the administrative decision and granting the injunction. Appellant's second assignment is not well-taken.

{¶33} The judgment of the trial court is affirmed.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.