OPINION
{¶ 1} The City of Dayton ("the City") is appealing a decision from the Montgomery County Court of Common Pleas which overruled a decision from the City of Dayton Board of Zoning Appeals ("BZA"). The BZA's decision denied James D. Ledford's application for a conditional use as an automobile repair establishment and his application for a variance.
 {¶ 2} On May 2, 2002, the Ledfords filed two applications with the City's Zoning Administrator regarding the property located at 57 Light Street. The first application concerned a conditional use permit to operate an auto repair garage, and the second application sought a variance of the requirement to have a paved parking area for the auto repair garage. The property in question is the Ledfords' residence and their place of business.
 {¶ 3} The BZA heard testimony on May 28, 2002 and June 25, 2002 regarding the applications. At the hearing, the following facts were adduced.
 {¶ 4} The Ledfords have operated a towing and automobile parts retail business on their property for twenty-three years. The Ledfords tow unclaimed automobiles to the property, strip them of their parts, and tow the automobiles to a facility where they are crushed and destroyed. The Ledfords then sell the extracted parts from their retail business, which is located on the property in question.
 {¶ 5} James Ledford testified that he had purchased the business from the previous owners twenty-three years ago, and the previous owners had operated the business in the same manner as the Ledfords since the 1960s. Evidence of this continuous use was corroborated by several letters from neighbors and surrounding business owners. One such letter verified the existence of a similar business to the Ledfords' as far back as 1945.
 {¶ 6} At the hearing, James Ledford and his attorney, Thomas Randolph, explained to the BZA that they had applied for the applications as a result of conversations with members of the BZA, including Steve Carne, the City's Zoning Administrator, who had informed them that a conditional use permit would have to be sought to continue operating their business. As no conditional use in the City's Zoning Code conformed to his business, James Ledford applied for the automobile repair shop conditional use because that option closely conformed to his business more than the other options in the Code.
 {¶ 7} Despite the Ledfords' testimony that the business had been operated in a similar fashion since the 1960s, and despite their argument that they had been "forced" to apply for a conditional use permit, it is important to note that during the hearing, James Ledford stated that he would like to proceed with his application for a conditional use permit for an automobile repair garage to repair his own automobiles on his property.
 {¶ 8} The BZA journalized its decision on June 28, 2002, granting the application for a conditional use permit to use the property for an automobile repair facility for the purpose of repairing the Ledfords' vehicles, with certain conditions. The variance for the hard surface parking area was denied. The conditions placed upon the granting of the conditional use permit were as follows:
 {¶ 9} "1. No dismantling, wrecking, or storage of automobile vehicles, parts or accessories shall be permitted.
 {¶ 10} "2. The entire operation of the proposed automobile repair garage shall be enclosed with either a solid fence, solid wall, or dense living hedge not less than six feet in height shall be provided along north and west lot line. The existing fence along the east and south line shall remain.
 {¶ 11} "3. The applicant/owner shall submit documentation to the Zoning Administrator to verify compliance with applicable zoning requirements regarding the parked/stored vehicles area next to or east of existing building. If documentation is not provided, the parked/stored vehicles shall be removed from the area.
 {¶ 12} "4. The parking area shall be paved.
 {¶ 13} "5. Hours of operation shall be limited to Monday through Saturday from 9:00 A.M. to 6:00 P.M.
 {¶ 14} "6. The Board of Zoning Appeals will conduct a six-month review."
(Doc. No. 1, Exh. D.)
 {¶ 15} On July 23, 2002, the Ledfords filed a complaint with the Montgomery County Court of Common Pleas for declaratory judgment concerning the legality of the City of Dayton's attempt to pre-empt a continuous non-conforming use and a notice of administrative appeal of the BZA's decision.
 {¶ 16} In its decision, the trial court found that the weight of the evidence did not support the BZA's decision regarding the issue of a continuous non-conforming use. Specifically, the trial court found that a preponderance of the evidence existed in the record that the Ledfords and the previous owners had continuously operated the business prior to the enactment of the City's Zoning Code, thus the use of the property was placed outside the scope of the Code pursuant to § 150.10. The trial court also found that the "BZA's decision on the conditional use and variance issues is resolved upon a finding of continuous, non-conforming use. Therefore, the conditional use and variance issues are moot, and BZA's decision concerning these issues is reversed." (Doc. No. 29, p. 5.)
 {¶ 17} Regarding the conditional use permit for the purpose of operating an automobile repair garage, the trial court reversed the BZA's decision based upon the BZA's decision addressing only commercial, not residential, automobile repair provisions. The trial court explained that under Dayton Revised Code of General Ordinances, §§ 150.183, 150.348, "automobile repair garage" is qualified as either commercial and non-residential, or "business and industrial use" within the context of home occupations. Since the BZA offered no additional reason for its decision, the trial court reversed the BZA's decision.
 {¶ 18} The City now appeals that decision, asserting two assignments of error for our review.
 {¶ 19} Preliminarily, we note that R.C. 2506.01 governs the court of common pleas' review of an administrative board's decision. R.C. 2506.04
provides the appropriate standard of review:
 {¶ 20} "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings of opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."
 {¶ 21} As this court stated in Stickelman v. Harrison TownshipBoard of Zoning Appeals, 148 Ohio App.3d 190, 191-192, 772 N.E.2d 683,2002-Ohio-2785, §§ 10-11, a review by a court of appeals is more limited:
 {¶ 22} "We may review the common pleas court judgment `' only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court.' [Henley v.Youngstown Bd. of Zoning Appeals, 90 Ohio St.3d 142, 147, 735 N.E.2d 433,2000-Ohio-493.] However, `within the ambit of `questions of law' for appellate court review would be abuse of discretion by the common pleas court.' BP Oil Co. v. Dayton Bd. of Zoning Appeals (1996),109 Ohio App.3d 423, 428, 672 N.E.2d 256. In this regard, the Ohio Supreme Court has also stressed:
 {¶ 23} `The fact that the court of appeals * * * might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.' 90 Ohio St.3d at 147, 735 N.E.2d 433."
 {¶ 24} We will address both assignments of error simultaneously for ease of organization.
 {¶ 25} "The lower court's finding that a continuous non-conforming use existed was not supported by a preponderance of reliable, probative and substantial evidence."
 {¶ 26} "The lower court's ruling overturning the BZA's approval of Appellant's application for a conditional use permit, and its dential {sic} of Appellant's application for a variance, was not supported by a preponderance of reliable, probative and substantial evidence."
 {¶ 27} The City asserts that the Ledfords "never made a `continuous use' argument before the BZA." Instead, the Lefords' conditional use application was for the repair of their personal and business automobiles, which was not in conformity with the prior use of the property. Furthermore, the City asserts that "[n]o one made Mr. Ledford apply for a conditional use permit and a variance."
 {¶ 28} The trial court in this instance found that the BZA did not consider the existence of a pre-existing non-conforming use, despite the presentation of evidence offered at the administrative level to support such an argument. The trial court found evidence of the existence of a pre-existing non-conforming use in several letters from surrounding business persons and neighbors which corroborated the Ledfords' premise that the business had been operated in the same manner as it had been prior to the enactment of the City of Dayton Zoning Code. Based upon this, the trial court found that a preponderance of the evidence existed to support the Ledfords' assertion concerning their continuous non-conforming use, and thus the use was properly outside the scope of the City of Dayton, Zoning Code § 150.10. The trial court concluded that the "BZA's decision on the conditional use and variance issues is resolved upon a finding of continuous, non-conforming use." (Doc. No. 29, p. 5.)
 {¶ 29} We agree. Property owners are permitted to continue a non-conforming use based on the recognition that one should not be deprived of a substantial investment that existed prior to the enactment of a zoning resolution. Beck v. Springfield Twp. Bd. of Zoning Appeals
(1993), 88 Ohio App.3d 443, 446, 624 N.E.2d 286, citing Curtiss v.Cleveland (1959), 170 Ohio St. 127, 132, 163 N.E.2d 682. However, the law does not favor non-conforming uses. Kettering v. Lamar OutdoorAdvertising, Inc. (1987), 38 Ohio App.3d 16, 18, 525 N.E.2d 836. Local governments may prohibit the expansion or substantial alteration of a non-conforming use in an attempt to eradicate that use, and they may regulate non-conforming uses to the point that they "wither and die."Beck, supra, 446. (Citations omitted).
 {¶ 30} Several times throughout the hearing James Ledford and his attorney asserted that the reason they were before the BZA was because they wanted to continue the process of removing parts from broken-down vehicles and selling those parts in his retail business. Steve Carne and other members of the BZA informed the Ledfords that they must apply for a conditional use permit to continue this business. As a result, they applied for a conditional use permit for the use of an automobile repair garage, as it seemed to be the "closest use" to the Ledfords' pre-existing business.
 {¶ 31} During the hearing, there was sufficient testimony that the Ledfords had been operating the business for twenty-three years, and that prior to the Ledfords running the business, the previous owners had operated the business in the same manner since the 1960s. As the trial court noted, "[i]n addition to Appellant Ledford's own testimony that the business is operated in the same manner it was prior to the enactment of the Zoning Code, Appellants offer several letters from surrounding business persons and neighbors in support of this contention. Additionally, Appellees have offered no evidence to contradict Appellants' proffered evidence." (Doc. No. 29, p. 4.)
 {¶ 32} Based upon the testimony provided and the evidence submitted, we find that competent, credible evidence supports the trial court's determination that the Ledfords' use of the subject property constituted a valid pre-existing and continuous non-conforming use, thus it is exempt from the City of Dayton's Zoning Code.
 {¶ 33} However, the fact that the Ledfords' operation is allowed to continue in its original location does not mean that the business is free from all regulation of its operation. Despite its existence as a prior non-conforming use, we must evaluate the trial court's decision regarding the application for the conditional use of the property and variance to repair the Ledfords' personal and business automobiles.
 {¶ 34} The trial court examined the City's Zoning Code and made a distinction between an automobile repair garage for the purposes of commercial and residential use. Because the Ledfords applied for a permit to repair automobiles for residential use, the trial court reversed the BZA's decision which denied the variance and granted the permit, but with specific conditions. We see no such distinction between residential and commercial use, and reverse the trial court's decision with respect to this issue.
 {¶ 35} The property in question is zoned "B-2", which is classified as a "Community Business District." Within the zoning for property that is classified as "B-2," one permitted conditional use is for an automobile repair garage. Dayton Zoning Code § 150.183(D). However, there are three sets of "standards" under that section that govern certain conditions for the existence of an automobile repair garage:
 {¶ 36} "(1) No dismantling, wrecking, or storage of automobile vehicles, parts or accessories shall be permitted. The entire operation of an automobile repair garage shall be within an enclosed building, and a solid masonry wall or its equivalent, shall be provided on the side of the structure adjacent to or across an alley from any residential district. Where an automobile repair garage is located adjacent to a Residential, Office-Residential or University District, an effective screen of either a solid fence, solid wall, or dense living hedge not less than 6 feet in height shall be provided along the common lot line.
 {¶ 37} "(2) The use of equipment which produces noise or waste products shall be confined to an enclosed structure, with suitable provisions to prevent the creation of a nuisance. * * *
 {¶ 38} "(3) All of the linear frontage, absent of portions used for driveway approaches shall be landscaped. The landscaping shall consist of a strip of ground, a minimum of five feet (5') in width, surrounded by poured in place 6 inch high concrete curb, consisting of a combination of plant and lawn material with 21/2 inch caliper deciduous canopy and/or ornamental trees, planted no farther apart than 30 feet. * * *"
City of Dayton Zoning Code § 150.183(D).
 {¶ 39} We disagree with the trial court and find no other applicable section in the code dealing with a conditional use permit for an automobile repair facility. Instead, we find that BZA's decision regarding the application for the conditional use permit and variance as relating to the conditional use of an automobile repair garage was appropriate under the Code. Accordingly, the conditions set forth by the BZA resulted from conditions and standards mentioned directly in the Code, and we find no error.
 {¶ 40} The City's assignments of error are reversed in part and sustained in part.
 {¶ 41} The judgment of the trial court is affirmed in part, reversed in part and remanded for further proceedings in accordance with this decision.
Fain, P.J. and Glasser, J., concur.
Hon. George M. Glasser sitting by assignment of the Chief Justice of the Supreme Court of Ohio.