LEDFORD et al., Appellees and Cross–Appellants,

v.

BOARD OF ZONING APPEALS et al., Appellants and Cross–Appellees.

[Cite as *Ledford v. Bd. of Zoning Appeals*, 171 Ohio App.3d 24, 2007-Ohio-1673.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21769.

Decided April 6, 2007.

Leppla Associates, Gary J. Leppla, and Eric S. Thompson, for appellees and cross-appellants.

Patrick J. Bonfield, Dayton Director of Law, and John J. Danish and Timothy S. Downs, Assistant City Attorneys, for appellants and cross-appellees.

BROGAN, Judge.

{¶ 1} This case involves an appeal and cross-appeal from the judgment of the Common Pleas Court of Montgomery County, ordering that appellants, James and Brenda Ledford, may not operate an automobile repair garage on their property unless they obtain a conditional-use permit from appellee, Board of Zoning Appeals, city of Dayton ("BZA"). Specifically, the parties seek an interpretation of this court's ruling in *Ledford v. Bd. of Zoning Appeals,* Montgomery App. No. 19872, 2003-Ohio-7242, 2004 WL 68756.

{¶ 2} The facts underlying this appeal are set out in this court's prior decision in *Ledford.* The facts are as follows:

{¶ 3} "On May 2, 2002, the Ledfords filed two applications with the City's Zoning Administrator regarding the property located at 57 Light Street. The first application concerned a conditional use permit to operate an auto repair garage, and the second application sought a variance of the requirement to have a paved parking area for the auto repair garage. The property in question is the Ledfords' residence and their place of business.

{¶ 4} "The BZA heard testimony on May 28, 2002 and June 25, 2002 regarding the applications. At the hearing, the following facts were adduced:

{¶ 5} "The Ledfords have operated a towing and automobile parts retail business on their property for twenty-three years. The Ledfords tow unclaimed automobiles to the property, strip them of their parts, and tow the automobiles to a facility where they are crushed and destroyed. The Ledfords then sell the extracted parts from their retail business, which is located on the property in question.

{¶ 6} "James Ledford testified that he had purchased the business from the previous owners twenty-three years ago, and the previous owners had operated the business in the same manner as the Ledfords since the 1960s. Evidence of this continuous use was corroborated by several letters from neighbors and surrounding business owners. One such letter verified the existence of a similar business to the Ledfords' as far back as 1945.

{¶ 7} "At the hearing, James Ledford and his attorney, Thomas Randolph, explained to the BZA that they had applied for the applications as a result of conversations with members of the BZA, including Steve Carne, the City's Zoning Administrator, who had informed them that a conditional use permit would have to be sought to continue operating their business. As no conditional use in the City's Zoning Code conformed to his business, James Ledford applied for the automobile repair shop conditional use because that option closely conformed to his business more than the other options in the Code.

{¶ 8} "Despite the Ledfords' testimony that the business had been operated in a similar fashion since the 1960s, and despite their argument that they had been 'forced' to apply for a conditional use permit, it is important to note that during the hearing, James Ledford stated that he would like to proceed with his application for a conditional use permit for an automobile repair garage to repair his own automobiles on his property.

{¶ 9} "The BZA journalized its decision on June 28, 2002, granting the application for a conditional use permit to use the property for an automobile repair facility for the purpose of repairing the Ledfords' vehicles, with certain conditions. The variance for the hard surface parking area was denied. The conditions placed upon the granting of the conditional use permit were as follows:

{¶ 10} " '1. No dismantling, wrecking, or storage of automobile vehicles, parts or accessories shall be permitted.

{¶ 11} " '2. The entire operation of the proposed automobile repair garage shall be enclosed with either a solid fence, solid wall, or dense living hedge not less than six feet in height shall be provided along north and west lot line. The existing fence along the east and south line shall remain.

{¶ 12} " '3. The applicant/owner shall submit documentation to the Zoning Administrator to verify compliance with applicable zoning requirements regarding the parked/stored vehicles area next to or east of existing building. If documentation is not provided, the parked/stored vehicles shall be removed from the area.

{¶ 13} " '4. The parking area shall be paved.

{¶ 14} " '5. Hours of operation shall be limited to Monday through Saturday from 9:00 A.M. to 6:00 P.M.

{¶ 15} " '6. The Board of Zoning Appeals will conduct a six-month review.'
* * *

{¶ 16} "On July 23, 2002, the Ledfords filed a complaint with the Montgomery County Court of Common Pleas for declaratory judgment concerning the legality of the City of Dayton's attempt to pre-empt a continuous non-conforming use and a notice of administrative appeal of the BZA's decision.

{¶ 17} "In its decision, the trial court found that the weight of the evidence did not support the BZA's decision regarding the issue of a continuous non-conforming use. Specifically, the trial court found that a preponderance of the evidence existed in the record that the Ledfords and the previous owners had continuously operated the business prior to the enactment of the City's Zoning Code, thus the use of the property was placed outside the scope of the Code pursuant to § 150.10. The trial court also found that the 'BZA's decision on the conditional use and variance issues is resolved upon a finding of continuous, non-conforming use. Therefore, the conditional use and variance issues are moot, and BZA's decision concerning these issues is reversed.' * * *

{¶ 18} "Regarding the conditional use permit for the purpose of operating an automobile repair garage, the trial court reversed the BZA's decision based upon the BZA's decision addressing only commercial, not residential, automobile repair provisions. The trial court explained that under Dayton Revised Code of General Ordinances, §§ 150.183, 150.348, 'automobile repair garage' is qualified as either commercial and non-residential, or 'business and industrial use' within the context of home occupations. Since the BZA offered no additional reason for its decision, the trial court reversed the BZA's decision."

{¶ 19} On appeal, this court affirmed the trial court's determination that the Ledfords' use of their property for the towing and automobile parts retail business constituted "a valid pre-existing and continuous non-conforming use, [sic] thus it is exempt from the City of Dayton's Zoning Code." *Ledford*, 2003-Ohio-7242, 2004 WL 68756, at ¶ 32. However, we reversed the trial court's finding that the BZA's decisions to grant a conditional-use permit for an automobile repair garage on the premises but deny a variance for a hard-surface parking area were moot. Unlike the trial court, we did not find a distinction in the Dayton Zoning Code between commercial or residential use of an automobile repair garage. See Dayton Zoning Code Sections 150.183(D) and 150.187(G). As a result, we held that the BZA appropriately granted a conditional-use permit for an automobile repair garage, even though the Ledfords' application sought permission to repair automobiles only for residential use. Accordingly, we remanded this matter to the trial court to address the Ledfords' application regarding the conditional use of the property for repairing personal and business automobiles.

{¶ 20} On remand, the trial court found that the conditions set forth by Section 150.187(G) of the Dayton Zoning Code, especially the condition prohibiting the dismantling, wrecking, or storage of automobile vehicles, parts, or accessories, prohibited the Ledfords from operating an automobile repair garage that entailed commercial activity. According to the court, "the repairing of one's own vehicles does not require a conditional use permit because it is not a commercial activity. However, automobiles being dismantled and 'parting-out' or the storage of automobiles which are being repaired for commercial sale, are in fact, commercial activities and require a conditional use permit. The fact that an individual owns multiple vehicles does not permit the individual to change the nature of his property into a junkyard or a commercial automobile repair garage." The court, therefore, ordered that the Ledfords may not operate an automobile repair garage at their home without a conditional-use permit from the BZA; however, the Ledfords were not prohibited from providing personal maintenance at their residence on the vehicles that they owned and operated.

{¶ 21} The Ledfords and the BZA filed timely appeals from the trial court's July 31, 2006 judgment and entry. As a means of analysis, we will address each appeal and cross-appeal separately.

{¶ 22} Initially, we note that the standards of review for a court of common pleas and an appellate court differ considerably when an administrative appeal is involved. In the case of *In re Application for Conditional Use of Watkins* (Feb. 18, 2000), Montgomery App. No. 17723, 2000 WL 192430, this court confirmed that a court of common pleas must " 'determine whether there exists a preponderance of reliable, probative and substantial evidence' " to support an agency decision. Id. at *2, quoting *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 389 N.E.2d 1113. Furthermore, the trial court must presume that the agency decision is " 'reasonable and valid.' " Id., quoting *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals* (1993), 66 Ohio St.3d 452, 456, 613 N.E.2d 580. Thus, the trial court must affirm the decision of the administrative agency if it is "supported by a preponderance of reliable, probative and substantial evidence." Id., citing *Dudukovich*, 58 Ohio St.2d at 207, 12 O.O.3d 198, 389 N.E.2d 1113.

{¶ 23} In contrast, when an appellate court reviews a trial court's decision regarding an agency order, the appellate court uses two distinct standards of review. *Lamar Outdoor Advertising v. Dayton Bd. of Zoning Appeals* (June 21, 2002), Montgomery App. No. 18902, 2002-Ohio-3159, 2002 WL 1349600, at ¶ 12. On a question of fact, an appellate court's review is limited to an abuse of discretion. Id. An abuse of discretion exists where the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. However, on a question of law, an

appellate court's review is de novo. *Ohio Dept. of Commerce, Div. of Real Estate v. DePugh* (1998), 129 Ohio App.3d 255, 261, 717 N.E.2d 763. Thus, we apply the same standards as the trial court without deference to the trial court's decision. *Brinkman v. Doughty* (2000), 140 Ohio App.3d 494, 497, 748 N.E.2d 116.

{¶ 24} Upon review, we find that the Ledfords may not operate an automobile repair garage for personal or commercial use on their property absent a conditional-use permit from the city of Dayton. Insofar as the trial court's decision makes a distinction between residential and commercial use for the purpose of obtaining a conditional-use permit to operate an automobile repair garage, we will reverse the decision of the trial court and remand the cause for further proceedings.

## I. Direct Appeal of the Board of Zoning Appeals, City of Dayton

{¶ 25} In its sole assignment of error, the BZA contends that "[t]he lower court erred when it deviated from the law of the case, finding that a conditional use permit is not necessary for the maintenance and repair of personal vehicles."

{¶ 26} As we stated in our previous decision, the Ledfords' property is located in a B–2 community business district. Dayton Zoning Code Section 150.181 et seq. Within this district, automobile repair garages are permitted as conditional uses, subject to the following standards:

{¶ 27} "(1) No dismantling, wrecking, or storage of automobile vehicles, parts or accessories shall be permitted. The entire operation of an automobile repair garage shall be within an enclosed building, and a solid masonry wall or its equivalent, shall be provided on the side of the structure adjacent to or across an alley from any residential district. Where an automobile repair garage is located adjacent to a Residential, Office–Residential or University District, an effective screen of either a solid fence, solid wall, or dense living hedge not less than 6 feet in height shall be provided along the common lot line.

{¶ 28} "(2) The use of equipment which produces noise or waste products shall be confined to an enclosed structure, with suitable provisions to prevent the creation of a nuisance. * * *

{¶ 29} "(3) All of the linear frontage, absent of portions used for driveway approaches shall be landscaped. The landscaping shall consist of a strip of ground, a minimum of five feet (5') in width, surrounded by poured in place 6 inch high concrete curb, consisting of a combination of plant and lawn material with 2–1/2 inch caliper deciduous canopy and/or ornamental trees, planted no farther apart than 30 feet. * * * " City of Dayton Zoning Code Section 150.183(D); Section 150.187(G).

{¶ 30} An automobile repair garage denotes a building or structure used for the purpose of motor vehicle repair. Under the Dayton Zoning Code in effect in 2002, motor vehicle repair was defined as "[t]he use of a building or portion thereof for service, repair, rebuilding, or remodeling of motor vehicles and which may include body, chassis, engine and/or drive train work." Dayton Zoning Code Section 150.0354. We note that nowhere in the zoning code's discussion of an automobile repair garage or motor vehicle repair is there a distinction between residential or commercial use. However, we also find that motor vehicle repair, in the context of an automobile repair garage, implies more than routine maintenance or minor repairs. We turn to the 2006 zoning code's definition of motor vehicle repair as instructive on this point. Currently, the term is defined as "[a]n establishment providing repair services for motor vehicles, including the sale, installation and servicing of related equipment and parts, where all such work is performed within an enclosed building. This term includes, but is not limited to, the repair or servicing of transmissions, engines or upholstery including the rebuilding or reconditioning of motor vehicles, or parts thereof, including clutch, transmission, differential, axle, spring, and frame repairs; major overhauling or engines requiring the removal of the engine cylinder, head or crankcase pan; repairs to radiators requiring the removal thereof; or similar activities. *This term also includes, but is not limited to, an auto repair shop, wheel and brake shop, tire sales and installation, or upholstery shop.  * * * "* (Emphasis added.) Dayton Zoning Code Section 150.200(B)(143). The list of repairs included under the definition of motor vehicle repair demonstrates the extensiveness to which the code categorizes automobile repairs. Clearly omitted from this list is any work constituting routine maintenance, such as oil changes or minor repairs.

{¶ 31} In the present case, the BZA argues that the trial court erred when it found that the Ledfords were permitted to provide personal maintenance to the vehicles they owned and operated, so long as they refrained from commercial activities such as dismantling, wrecking, parting-out, or storage of automobiles, parts, or accessories. We agree to the extent that the trial court's decision permits personal maintenance conforming to the repairs included under the definition of motor vehicle repair. Under the Dayton Zoning Code, the Ledfords may not operate an automobile repair garage in which they perform extensive servicing or repairs to their own or others' vehicles without obtaining a conditional-use permit. This includes major servicing, overhauling, and dismantling and rebuilding of engines, transmissions, automobile frames, and upholstery. It also includes the wrecking, parting-out, or storing of personal vehicles and their parts and accessories. Our finding, however, does not prohibit the Ledfords from providing minor maintenance such as changing the oil, adding fluids, replacing

the wiper blades, etc., all of which are repairs that could essentially be performed by the average automobile owner in his or her own driveway or garage.

{¶ 32} Thus, we find that the trial court erred insofar as it broadly permitted under the Dayton Zoning Code an automobile repair garage for the maintenance of one's personal automobiles without obtaining a conditional-use permit from the BZA. Accordingly, the BZA's assignment of error is sustained.

## II.   Cross–Appeal of the Ledfords

{¶ 33} The Ledfords raise the following assignment of error on appeal: "The trial court erred to the prejudice of Mr. Ledford by ruling that he must obtain a conditional use permit in order to continue dismantling, wrecking, parting out or storing automobile parts or accessories."   Specifically, the Ledfords assert that they should not be required to obtain a conditional-use permit to operate an automobile repair garage, where one of the conditions prohibits what this court found to be a valid preexisting and continuous nonconforming use under the zoning code, i.e., the Ledfords' towing business.   For the following reasons, we disagree.

{¶ 34} It is well established that " '[T]he right to continue a nonconforming use is based upon the concept that one should not be deprived of a substantial investment which existed prior to the enactment of the zoning ordinance.' "   *Kettering v. Lamar Outdoor Advertising, Inc.* (1987), 38 Ohio App.3d 16, 18, 525 N.E.2d 836, quoting Young, The Regulation and Removal of Nonconforming Uses (1961), 12 W. Res. L.Rev. 681, 691.   However, nonconforming uses are not favorites of the law.   Id. Thus, "[t]he rights of a nonconforming user are limited, and the clear intent and purpose is to eliminate such nonconforming uses as rapidly as possible."   Id.

{¶ 35} One means of eliminating a nonconforming use is to allow local governments to prohibit the expansion or substantial alteration of such use. *Beck v. Springfield Twp. Bd. of Zoning Appeals* (1993), 88 Ohio App.3d 443, 446, 624 N.E.2d 286.   Furthermore, a nonconforming use will terminate upon the "other use of the property in a manner that has the effect of denying any claim to the right of continuance of such nonconforming use."   Babbit, Gotherman & Lang, Local Government Law–Municipal (2004) 860, Section 25:46.

{¶ 36} Here, there is no dispute that the Ledfords' towing business constitutes a preexisting and continuous nonconforming use of their property.   We previously found that there was sufficient testimony at the hearings before the BZA, in addition to letters from surrounding businesses and neighbors, that the Ledfords had been operating a towing and automobile parts retail business on their property for 23 years.   *Ledford,* 2003-Ohio-7242, 2004 WL 68756, at ¶ 31.   As

part of this business, the Ledfords tow unclaimed automobiles to their property, where they strip them of parts that can later be sold from their retail business, also located on the property. Id. at ¶ 4. When finished dismantling and parting-out the automobiles, the Ledfords tow them to a different facility for disposal. Id.

{¶ 37} The evidence before us, however, does not indicate that part of this preexisting nonconforming use had been an automobile repair garage. Mr. Ledford stated under oath "[t]hat the only automobile repair, *which is unrelated to the prior pre-existing use which includes dismantling and 'parting out' automobiles,* involves personal vehicles and property owned by [him] which in no way involves the business use at 57 Light Street." (Emphasis added.) By his own admission, there was no automobile repair included within the preexisting towing business. Moreover, the evidence alone does not sufficiently demonstrate that the maintenance Mr. Ledford performed on his vehicles rises to the level of motor vehicle repairs, as we discussed above, and thus constitutes a separate preexisting and continuous nonconforming use.

{¶ 38} We find that attaching an automobile repair garage as a permitted use of the Ledfords' property to their valid towing and automobile parts retail business would constitute a substantial alteration to the preexisting nonconforming use. Therefore, the city of Dayton may prohibit the alteration and, in effect, eliminate the nonconforming use should the Ledfords continue to pursue the conditional-use permit for an automobile repair garage. See *Casto v. Commercial Point* (Dec. 22, 1999), Pickaway App. No. 99 CA 2, 1999 WL 1266035 (refusing to permit construction of a car wash in a B–1 business district unless the applicant discontinued his nonconforming use as an R–1 residential district pursuant to the municipal zoning code). In other words, because the Dayton Zoning Code prohibits dismantling, wrecking, or storage of automobiles, their parts, or accessories for all automobile repair garages, the Ledfords must discontinue their nonconforming use of 57 Light Street as a towing and automobile parts retail business if they elect to operate an automobile repair garage on the property. In the alternative, having found the towing and automobile parts retail business to be a valid preexisting and continuous nonconforming use, the Ledfords may continue this business only unless voluntarily discontinued for the period prescribed by the Dayton Zoning Code, Section 150.414(F), and in accordance with R.C. 713.15.

{¶ 39} Thus, the Ledfords' assignment of error is without merit and is hereby overruled. Accordingly, the judgment of the trial court with respect to finding that the Ledfords must obtain a conditional-use permit in order to operate an

**34**

automobile repair garage, including dismantling, wrecking, parting out, or storing automobile parts or accessories at their residence, is affirmed.

Affirmed in part<br>and reversed in part,<br>and cause remanded.

WOLFF, P.J., and GLASSER, J., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.