OPINION
{¶ 1} Plaintiff-appellant, Deerfield Township, appeals the judgment of the Portage County Court of Common Pleas, granting judgment on its claim for declaratory relief in favor of defendant-appellee, Deerfield Raceway, LLC. For the following reasons, we affirm the decision of the court below.
 {¶ 2} Deerfield Raceway is located on two parcels of property at 9673 State Route 224 in Deerfield Township, Portage County. The property has been used for *Page 2 
racing since the early 1970's. Formerly known as Deerfield Speedway, the Raceway is a quarter-mile dirt racing track.
 {¶ 3} In 1979, Deerfield Township passed a zoning resolution classifying the property on which the Raceway is located as part of a residential district.
 {¶ 4} On July 17, 1989, Deerfield Township filed a complaint in the Portage County Court of Common Pleas seeking a preliminary and permanent injunction against the owners of the property to prohibit them from conducting races on the property. Deerfield Twp. Trustees v. Kays
(December 28, 1990), 11th Dist. No. 90-P-2177, 1990 Ohio App. LEXIS 5842, at *2-*3.
 {¶ 5} On April 4, 1990, the trial court dismissed the complaint with prejudice, ruling that "the Deerfield Speedway is a non-conforming use allowable by law not restricted to types of vehicles raced or dates of operation." Cf. Kettering v. Lamar Outdoor Advertising, Inc. (1987),38 Ohio App.3d 16, 17-18 ("[a] use of property in existence on the effective date of a new municipal ordinance, which use does not comply with the new ordinance, is called a `nonconforming use').
 {¶ 6} Deerfield Township appealed the judgment to this court, raising a single assignment of error: whether "[t]he trial court erred in finding that Deerfield Speedway is being operated as a valid non-conforming use." Id. at *3.
 {¶ 7} In its decision, this court observed that "the race track had been used for a variety of different types of racing, including motorcycle racing, prior to the enactment of the Deerfield Township Zoning Resolution." Id. at *4. "From 1979 until sometime in the early 1980's, [the Northeastern Ohio Modified Midget Association] operated the track and raced primarily midget car[s] in addition to all terrain vehicles." Id. at *5. Since 1984, when Roy Kays began operating the track, "[i]n addition to micro midget cars, allterrain *Page 3 
vehicles and motorcycles have also been raced at the track * * *." Id. at *2. Between 1977 and 1984, however, there was no evidence that motorcycles were raced at the track.
 {¶ 8} Based on these findings, this court concluded that "any nonconforming use that may have existed applied to the racing of midget cars but not to the racing of motorcycles." Id. at *5. We held: "[T]he judgment of the trial court is reversed * * * with respect to the discontinuance of motorcycle racing at Deerfield Speedway. The trial court's judgment is affirmed regarding midget car racing, in that the court correctly determined that midget car racing was a valid nonconforming use." Id. at *6.
 {¶ 9} Testimony from the June 2007 hearing before the magistrate in this matter clarified the distinctions among the different types or classes of vehicles used at the Raceway. "Midget" cars, also known as "Sprint" cars, are built with full-size racing engines, such as Offenhausers, with four or six cylinders. Their speed and power make them unsuitable for racing on a quarter-mile track, such as the Raceway track.
 {¶ 10} Although this court's prior opinion refers to "midget car racing," full-size midget cars were not raced at Deerfield Raceway. Rather, the vehicles at issue in the prior appeal are properly known as "micro midgets" or "micro sprints." As the name suggests, the micro midget or sprint is a smaller, less-powerful version of a full-size midget or sprint. Typically, a micro has a single-cylinder engine, such as a Briggs Stratton.
 {¶ 11} The term "all terrain vehicle" or ATV refers to a three-or four-wheeled motorcycle.
 {¶ 12} In 2003, Paul and Regina Miller acquired the property and began to operate the track as Deerfield Raceway. At this time, the only types of vehicles being *Page 4 
raced at the track were micro sprints and "dwarfs." "Dwarf" cars replicate other, factory-manufactured vehicles, but on a smaller scale and are equipped with motorcycle engines. Dwarf cars are also classified as "mod lites" and "sportsmans."
 {¶ 13} The Millers increased the types of vehicles raced to include "kids carts," and stock cars. Kids carts are built with "lawn mower" type engines. Stock cars are built with standard, factory-manufactured frames and engines, and are classified as "extreme pros" or "compacts."
 {¶ 14} On September 23, 2005, Deerfield Township filed a Petition Motion for Further Relief and for Declaration and Clarification of the Nonconforming Use of the Subject Property. The motion sought a "declaration by the court as to whether subcompact cars may be `raced' at the speedway in addition to midget cars; whether the racing of any type of vehicle beyond 11:00 PM may be prohibited; and whether all racing occurring at the speedway not exceed [sic] a noise level of 85 decibels."
 {¶ 15} On November 16, 2006, Speedway filed an Answer and Petition for Counterclaim, requesting the court to enjoin the Township "from filing any action challenging Deerfield Raceway LLC's prior non-conforming use of [the property] as a race track for racing automobiles qualified to race upon its track."
 {¶ 16} On June 4, 2007, a hearing was held on the issues raised before a magistrate of the Portage County Court of Common Pleas.
 {¶ 17} On June 21, 2007, the magistrate issued his Decision and Journal Entry: Findings of Fact and Conclusions of Law. The magistrate determined that the prior decisions of the trial court and the court of appeals "permitted auto racing at Deerfield Raceway" and that "neither court meant to limit racing to only one specified, albeit unsuited, class of race cars, to the exclusion of all others." The magistrate noted that *Page 5 
the evidence presented at the 1990 trial indicated that various classes of three-and four-wheeled race vehicles were being used at the race track. The magistrate also found that the vehicles which the Township sought to prevent from racing "are slower, quieter, safer, and create less dust than [the] Micro-midgets" which the Township conceded are allowed to be raced. The magistrate favored a "functional approach" to the issue of what constitutes a valid nonconforming use. "Enshrining a specific classification of race car, all of which will someday evolve into another, unknown and unknowable classification, is simply unworkable."
 {¶ 18} The magistrate concluded that "Deerfield Raceway is an auto racing track," and all "four-wheel race cars capable of operating safely on a quarter mile dirt track, including the classes of Micro-midgets, Micro-sprints, Mod-lites, Sportsmans, Dwarfs, Kids Carts, Odysseys, Extreme Pros, and Compacts * * * and their future and functionally similar variants, are an allowed, nonconforming use and may be raced at Deerfield Raceway."
 {¶ 19} The magistrate denied Deerfield Township's request for a declaration that racing activities must cease at 11:00 p.m. and be limited to certain noise levels and Deerfield Raceway's request for an injunction preventing the Township from challenging its status as a nonconforming use in future actions.
 {¶ 20} The trial court adopted the magistrate's decision on the day it was issued. Neither party filed objections.
 {¶ 21} Deerfield Township timely appeals and raises the following assignments of error:
 {¶ 22} "[1.] The trial court erred as a matter of law when it held that stock car racing was a nonconforming use of the land." *Page 6 
 {¶ 23} "[2.] The trial court's decision is against the manifest weight of the evidence."
 {¶ 24} "[3.] The trial court abused its discretion in allowing a new and popular class of motor vehicle to be raced at the track as a nonconforming use."
 {¶ 25} As a preliminary matter, we note that Deerfield Township did not file objections to the magistrate's decision. "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ. R. 53(D)(3)(b)." Civ. R. 53(D)(3)(b)(iv). "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v.Davidson, 79 Ohio St.3d 116, 1997-Ohio-401, at syllabus.
 {¶ 26} "The right to continue to use one's property in a lawful business and in a manner which does not constitute a nuisance and which was lawful at the time such business was established is within the protection of Section 1, Article XIV, Amendments, United States Constitution, and Section 16, Article I of the Ohio Constitution, providing that no person shall be deprived of life, liberty orproperty without due process of law." Akron v. Chapman (1953),160 Ohio St. 382, at paragraph two of the syllabus (emphasis sic). *Page 7 
 {¶ 27} The constitutional protections for nonconforming uses have been codified in R.C. 519.19 ("[t]he lawful use * * * of any land or premises, as existing and lawful at the time of enactment of a zoning resolution * * *, may be continued, although such use does not conform with such resolution") and in Deerfield Township Zoning Resolution, Section 601. Deerfield Zoning Resolution, Section 601.70, further provides that "[a] nonconforming use may not be changed to another nonconforming use unless the Board of Zoning Appeals on appeal determines that the proposed use conforms with the character and use of the district more than the existing nonconforming use." Cf. Curtiss v. Cleveland (1957),166 Ohio St. 509, at paragraph one of the syllabus (the requirement that municipal approval be obtained before one nonconforming use be substituted for another nonconforming use "constitutes a valid exercise of the police power of the municipality").
 {¶ 28} In its first and third assignments of error, Deerfield Township argues that the addition of stock car racing at the Raceway constitutes a change from one nonconforming use to another. The Township asserts that the magistrate and lower court misinterpreted this court's decision in Kays as establishing "auto racing," in general, as a nonconforming use of the track. According to the Township's position, this court's prior opinion expressly limited the types of vehicles that could be raced to midget/sprint class cars. See Kays, 1990 Ohio App. LEXIS 5842, at *6 ("[t]he trial court's judgment is affirmed regarding midget car racing").
 {¶ 29} The Township argues that its narrow interpretation ofKays is in accord with the law's unfavorable view of nonconforming uses: "Nonconforming uses * * * are not favorites of the law. The reason for their disfavored position is clear: if the segregation of buildings and uses, which is the function of zoning, is valid because of *Page 8 
the beneficial results which this brings to the community, to the extent this segregation is not carried out, the value of zoning is diminished and the public is thereby harmed. Nonconforming uses are allowed to exist merely because of the harshness of and the constitutional prohibition against the immediate termination of a use which was legal when the zoning ordinance was enacted. * * * The rights of a nonconforming user are limited, and the clear intent and purpose is to eliminate such nonconforming uses as rapidly as possible." Kettering,38 Ohio App.3d at 18 (citation omitted); Columbus v. Union Cemetery Assn. (1976),45 Ohio St.2d 47, 49 ("[u]ses which do not conform to valid zoning legislation may be regulated, and even girded to the point that they wither and die").
 {¶ 30} Efforts to eradicate nonconforming uses, however, are limited to restricting the expansion and substantial alteration of existing nonconforming uses. Weber v. Troy Twp. Bd. of Zoning Appeals, 5th Dist. No. 07 CAH 04 0017, 2008-Ohio-1163, at ¶ 16, citing Beck v. SpringfieldTwp. Bd. of Zoning Appeals (1993), 88 Ohio App.3d 443, 446; Ledford v.Bd. of Zoning Appeals, 171 Ohio App.3d 24, 2007-Ohio-1673, at ¶ 36
(citation omitted); Hunziker v. Grande (1982), 8 Ohio App.3d 87, 89
(citation omitted); cf. R.C. 519.19 ("[t]he board of township trustees shall provide in any zoning resolution for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning resolution").
 {¶ 31} In the present case, the racing of stock cars does not constitute an expansion or substantial alteration of the use of the property from its prior use as a track for racing midget and/or micro midget cars.
 {¶ 32} Although this court's prior decision referred to the "racing of midget cars," this reference to the type of racing that was being held at the track was factually *Page 9 
inaccurate. The evidence presented at the June 2007 hearing demonstrated that midget cars cannot be raced safely on the Raceway track and, in fact, have not been raced there. Moreover, this court's prior decision acknowledges that other types of vehicles were being raced on the property, specifically micro midgets and ATVs, but did not exclude these types of vehicles from being raced as it did motorcycles. For these reasons, we agree with the lower court that our prior decision did not limit the types of vehicles that could be raced on the property only to midget cars.
 {¶ 33} Assuming, arguendo, that this court did define the nonconforming use of the property narrowly, to midget class cars, the addition of stock cars does not constitute a substantial alteration of this use. As noted above, the basic differences between stock cars and midget and micro midgets are the types of engines and frames used. The differences are largely irrelevant to the use of the property as a race track, except that the larger, race car engines used in full-size midgets prohibit their use on a quarter-mile track. Thus, these differences do not provide a sufficient reason to preclude stock car racing as a valid nonconforming use. See, e.g. Isler v. Samsa (Mar. 18, 1996), 5th Dist. No. 1995CA00133, 1996 Ohio App. LEXIS 1295, at *9-*10 (the subsequent use of property as a garbage transfer recycling station was "identical" to its prior, nonconforming use as a garbage disposal business since the purpose of both was the disposal of trash);Kelley's Island v. Johnson (Jan. 26, 1996), 6th Dist. No. E-95-030, 1996 Ohio App. LEXIS 173, at *2 (upholding the decision to allow the replacement of one manufactured home, a nonconforming structure, with a newer manufactured home); Stewart v. Pedigo (1965), 2 Ohio App.2d 53, 56
(holding that the display of automobiles was the continuation of a prior nonconforming use allowing the display of garden tractors and lawn mowers). *Page 10 
 {¶ 34} Also significant is the fact, noted by the magistrate, that stock cars are "slower, quieter, safer, and create less dust" than the midget classes. Thus, the racing of stock cars is not any less in conformity "with the character and use of the [residential] district * * * than the existing nonconforming use," i.e. micro midget car racing. Deerfield Township Zoning Resolution, Section 601.70.
 {¶ 35} Accordingly, the lower court's finding that stock car racing is part of a valid, nonconforming use of the Raceway property as an auto racing track is not plain error. The first and third assignments of error are without merit.
 {¶ 36} Under the second assignment of error, Deerfield Township asserts that certain factual findings by the magistrate are against the manifest weight of the evidence.
 {¶ 37} The first is the following: "Prior to the purchase [of Deerfield Raceway], the Millers were told by the Deerfield zoning officials that auto racing at the track was allowed by zoning." The Township cites to testimony that, prior to purchasing the property, the Millers were advised at a meeting of the Deerfield Township Board of Trustees that "a change in the type of car to be raced would constitute a change in use and would have to come before the Board of Zoning Appeals." Regina Miller testified that the Deerfield Zoning Inspector, Frank Voss, told her that she "could race whatever was racing there * * * four cylinders." Voss testified that he would not have advised the Millers that stock car racing is allowed.
 {¶ 38} The magistrate's finding that the Millers were told "auto racing at the track was allowed by zoning" is problematical, since auto racing is not allowed by zoning, but, rather, constitutes a nonconforming use. Nonetheless, this finding was irrelevant to the *Page 11 
magistrate's decision, which did not suggest that the Township was estopped from challenging the racing of stock cars.
 {¶ 39} The Township also challenges the magistrate's finding that "[t]he race track is and always has been a quarter mile dirt track." The Township cites to testimony from the 1990 trial that the track was initially a tenth-mile track. At the June 2007 hearing, Zoning Inspector Voss testified the track has remained the same since he became Zoning Inspector in 1998. The property's former owner, Lester Brown, testified that there has been no change to the track since the mid-1970's. Since auto racing is the permitted nonconforming use based on the property's use in 1979 when the Township enacted its Zoning Resolution, the size of the track over thirty years ago is not relevant or material to the magistrate's ruling.
 {¶ 40} Since neither of the challenged findings were material to the disposition of the Township's claims, they do not rise to the level of plain error. The second assignment of error is without merit.
 {¶ 41} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, granting judgment on Deerfield Township's claim for declaratory relief in favor of Deerfield Raceway, is affirmed. Costs to be taxed against appellant.
CYNTHIA WESTCOTT RICE, J., concurs,
 TIMOTHY P. CANNON, J., concurs with Concurring Opinion. *Page 12