[Cite as *QRP Dayton Properties, L.L.C. v. Jefferson Twp. Bd. of Zoning Appeals*, 2014-Ohio-2209.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

QRP DAYTON PROPERTIES, LLC  :
dba COHEN

    Plaintiff-Appellant  :  C.A. CASE NO.  25984

v.  :  T.C. NO.  13 CV 1739

JEFFERSON TOWNSHIP BD. OF  :  (Civil appeal from
ZONING APPEALS, et al.  Common Pleas Court)

    Defendants-Appellees  :

:

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___23rd___ day of ___May___, 2014.

. . . . . . . . . .

MARTY BEYER, Atty. Reg. No. 0060078, 204 S. Ludlow Street, Suite 204, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

JEFFREY C. TURNER, Atty. Reg. No. 0063154 and DAWN M. FRICK, Atty. Reg. No. 0069068 and KEVIN A. LANTZ, Atty. Reg. No. 0063822, 1 Prestige Place, Suite 700, Miamisburg, Ohio 45342
    Attorneys for Defendants-Appellees

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}** Plaintiff-appellant QRP Dayton Properties, L.L.C., dba Cohen (hereinafter

"Cohen") appeals a judgment of the Montgomery County Court of Common Pleas affirming a decision rendered by the Jefferson Township Board of Zoning Appeals (hereinafter "BZA") which upheld the Jefferson Township Zoning Department's decision to issue a Legal Notice of Violation to Cohen. Cohen filed a timely notice of appeal with this Court on November 1, 2013.

{¶ 2}    The relevant history of the property at issue, 5940 West Third Street in Jefferson Township, Ohio, began in the 1950's when the property housed an auto parts retail store, Al's Auto Parts. Sometime later, the name of the business was changed to Affordable Auto Parts, but the focus of the business remained the sale of auto parts from junked vehicles. For approximately sixty years, the property has consistently been used "to take in junked cars and sell off the parts" by the prior owners of Al's and Affordable. Neither Al's nor Affordable engaged in a scrap metal line of business.

{¶ 3}    The record is not clear regarding Al's zoning classification under the Montgomery County Zoning Resolution (MCZR) which governed Jefferson Township zoning issues from approximately 1957 until 1970. The property, however, was zoned to permit the operation of an auto parts salvage business. Pursuant to the Jefferson Township Zoning Resolution (JTZR), which took effect after 1970 until now, the property is currently zoned as I-1, light industrial. The current zoning scheme does not permit the operation of an auto salvage business. Accordingly, the auto salvage business is a non-conforming use of the property under the JTZR.

{¶ 4}    In September of 2011, Cohen purchased the property from Affordable. According to Cohen, he "met with [Jefferson] Township's Administrator Len Roberts and its

Zoning Director Kevin Ney ***, disclosed [its] intent to add a scrap [metal] line of business, to which Roberts and Ney responded that [it] would not need any zoning change to accomplish this." Cohen continued using the property for the business of selling auto parts from junked vehicles. Cohen further expanded his business to include "scrap metal sales" and advertised his new business with a street sign. Cohen's scrap metal sales consisted of "walk-ups," or "people *** dragging there [sic] trashcans or their shopping carts *** and all the *** stuff that just doesn't look great[,]" including "aluminum, wrought iron, beer cans, tires, circuit boards, computers, air conditioners and refrigerators free of hazardous substances, copper, speakers, and wires."

{¶ 5} On December 4, 2012, Jefferson Township Zoning Director Kevin R. Ney issued a "Legal Notice of Violation" (LNV) to Cohen for "operating [the] business out of the scope of allowable use[,]" and "[p]lacing multiple signs in right a way [sic] on daily and flashing marquee[.]" Cohen appealed the LNV to the Jeffererson Township BZA on December 26, 2012. On January 24, 2013, and February 28, 2013, the BZA conducted hearings on Cohen's appeal of the LNV. In the hearings, Cohen requested "a continuation of nonconforming use dealing with junk." Essentially, Cohen argued that the property was primarily used to recycle junked automobiles and sell the parts. Cohen pointed out that only a small part of the property was used for purchasing scrap metal "which is merely another form of junk." Cohen asserted that the JTZR encompasses "both wrecked cars and common scrap" and explicitly provides that a property owner is permitted to continue a nonconforming use of his property. Cohen stated that he has simply supplemented the original prior nonconforming use without changing the property's nature and character.

{¶ 6} The BZA also heard testimony from residents in the surrounding community. The general theme of their testimony was that Cohen's scrap business resulted in increased theft in the area. Specifically, residents testified that people were stealing scrap metal and other property from occupied houses and selling the stolen materials to Cohen. On February 28, 2013, the BZA voted unanimously to uphold the LNV pursuant to § 3604.04 of the JTZR because Cohen had improperly extended, enlarged, and/or increased in intensity its nonconforming use of the property.

{¶ 7} On March 19, 2013, Cohen filed a Notice of Administrative Appeal with the trial court in order to appeal the BZA's decision upholding the issuance of the LNV. Again, Cohen argued that scrap is "just another form of junk" and therefore, "he hasn't changed the nature and character of the property's use." Cohen further argued that he only supplemented the original nonconforming use and the JTZR encompasses "both wrecked cars and scrap." Cohen asserted that the trial court should strictly construe the JTZR in his favor and reverse the BZA decision.

{¶ 8} Conversely, the BZA argued that its decision was supported by a preponderance of reliable, probative, and substantial evidence. Specifically, the BZA asserts that Cohen's scrap metal business must comport with the Montgomery County Zoning Resolution, rather than the JTZR, for it to maintain its prior nonconforming use of the property. Because the property had consistently been used to receive junked cars and sell their parts prior to the enactment of the JTZR, such a prior use must have been legal under the MCZR in order for such a use to subsequently qualify as a valid nonconforming use. Pursuant to the definition of "junkyard" in the MCZR, the BZA argues that the types of scrap that Cohen purchases are "necessarily excluded." Accordingly, Cohen's expansion

of the property into a scrap metal business changed the basic nature and character of the original nonconforming use, thus "resulting in increased crime to the detriment of public health and safety."

{¶ 9} The trial court ultimately held that the BZA's decision upholding the issuance of the LNV was supported by a preponderance of reliable, probative, and substantial evidence. Specifically, the trial court found that Cohen's "use of the property to purchase scrap metal does not bear a reasonable similarity to its [original] nonconforming use in auto part sales." The trial court also found that it was reasonable for the BZA to consider the testimony of nearby property owners and residents regarding the negative effect the scrap metal business was having on the surrounding area.

{¶ 10} It is from this decision that Cohen now appeals.

{¶ 11} "THE TRIAL COURT INCORRECTLY AFFIRMED THE BZA'S DECISION BECAUSE IT FAILED TO STRICTLY CONSTRUE THE TOWNSHIP'S ZONING CODE IN COHEN'S FAVOR AND BECAUSE COHEN'S USE DIDN'T CHANGE THE NATURE AND CHARACTER OF THE PROPERTY'S USE."

{¶ 12} In his sole assignment, Cohen contends that the trial court erred when it upheld the decision of the BZA because it failed to strictly construe the JTZR in his favor. Cohen also argues that his expanded use of the property as a scrap metal business did not change the nature and character of the property's prior nonconforming use as an automobile junkyard that sells salvaged auto parts.

{¶ 13} Initially, we note that the standards of review for a court of common pleas and an appellate court differ considerably when an administrative appeal is involved. In the

case of *In re Application for Conditional Use of Watkins*, 2d Dist. Montgomery No. 17723, 2000 WL 192430 (Feb. 18, 2000), this court confirmed that a court of common pleas must " 'determine whether there exists a preponderance of reliable, probative, and substantial evidence' " to support an agency decision. Id. at *2, quoting *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979). Furthermore, the trial court must presume that the agency decision is " 'reasonable and valid.' " *Id*., quoting *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals*, 66 Ohio St.3d 452, 456, 613 N.E.2d 580 (1993). "[I]n an administrative appeal pursuant to R.C. Chapter 2506, the common pleas court considers the whole record, including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Durell v. Spring Valley Twp. Bd. of Zoning Appeals*, 2d Dist. Greene No. 2012 CA 23, 2012-Ohio-5098, ¶21.

**{¶ 14}** In contrast, when an appellate court reviews a trial court's decision regarding an agency order, the appellate court uses two distinct standards of review. *Lamar Outdoor Advertising v. Dayton Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 18902, 2002-Ohio-3159, at ¶ 12. On a question of fact, an appellate court's review is limited to an abuse of discretion. *Id.* However, on a question of law, an appellate court's review is de novo. *Ohio Dept. of Commerce, Div. of Real Estate v. DePugh*, 129 Ohio App.3d 255, 261, 717 N.E.2d 763 (4th Dist.1998). Thus, we apply the same standards as the trial court without deference to the trial court's decision. *Brinkman v. Doughty*, 140 Ohio App.3d 494, 497, 748 N.E.2d 116 (2d Dist.2000).

{¶ 15} The MCZR defined "junk yard" as follows:

JUNK YARD

Any area where waste, discarded or salvaged materials are bought, sold, exchanged, baled, packed, disassembled or handled, including auto wrecking yards, house wrecking yards, used lumber yards or yards for storage of salvaged house wrecking and structural steel materials and equipment; but *** not including *** establishments for the sale, purchase or storage of *** used cars in operable condition, salvaged machinery, and the processing of used, discarded or salvaged materials as part of manufacturing operations.

{¶ 16} The JTZR defines "junk," and also provides a slightly modified version of "junk yard:"

JUNK

Old or scrap copper, brass, rope, rags, batteries, paper, rubber, junked, dismantled, or wrecked motor vehicles or parts thereof; iron, steel, and other old or scrap ferrous or nonferrous materials which are not held for sale or remelting purposes by an establishment having facilities for processing such materials.

JUNK YARD

An establishment or place of business *** which is maintained or operated for the purpose of storing, keeping, buying, or selling junk; or for the maintenance or operation of any automobile graveyard.

{¶ 17} We note that to the extent that "scrap" appears in the JTZR's definition of "junk," the JTZR does not permit "junk yards" in I-1 districts, where Cohen is located.

Admin. R. 15, Art. 23, Admin. R. 10, ¶ 2; Admin. R. 12 at 3-4; see Admin. R. 15, Art. 25, § 2502(B)(1) ("junk yard" is a conditional use in an "I-3," heavy industrial zone). We also note the JTZR prohibits a nonconforming use from being "extended, enlarged or increased in intensity." Art. 36, § 3604.04(E); see Art. 36 § 3601 (extension of nonconforming use must conform to zoning district's regulations).

{¶ 18}  A nonconforming use is a term "employed to designate a use of property which was lawful prior to the enactment of a zoning ordinance and which use may be continued after the effective date of the ordinance even though it does not comply with the applicable use restrictions." *C.D.S Inc. v. Village of Gates Mills*, 26 Ohio St.3d 166, 168, 497 N.E.2d 295 (1986), citing *State v. Pierce*, 164 Ohio St. 482, 132 N.E.2d 102 (1956). The fact that a use is conditional does not also mean that it fails to conform to an applicable zoning restriction; in essence, the use is permitted in the particular zoning district, although conditions apply. *Jennings v. Xenia Twp. Board of Zoning Appeals*, 2d Dist. Greene No. 07-CA-16, 2007-Ohio-2355.

{¶ 19}  It is well established that "the right to continue a nonconforming use is based upon the concept that one should not be deprived of a substantial investment which existed prior to the enactment of the zoning ordinance." *Kettering v. Lamar Outdoor Advertising, Inc.*, 38 Ohio App.3d 16, 18, 525 N.E.2d 836 (2d Dist.1987). However, nonconforming uses are not favorites of the law. *Id.* Thus, "the rights of a nonconforming user are limited, and the clear intent and purpose is to eliminate such nonconforming uses as rapidly as possible." *Id.*

{¶ 20}  On appeal, we must determine whether the decision of the BZA affirming

the LNV to Cohen for operating a scrap metal business outside the scope of its valid nonconforming use as an auto parts business on the property was supported by a preponderance of reliable, probative, and substantial evidence. In *Ledford v. Board of Zoning Appeals*, 171 Ohio App.3d 24, 2007-Ohio-1673, 869 N.E.2d 113 (2d Dist.), we held that adding an automobile repair garage as a permitted use of property to the property owner's preexisting nonconforming use of the property for a towing and automobile parts retail business constituted a substantial alteration to the preexisting nonconforming use. In the instant case, as in *Ledford*, there is no dispute that Al's and Affordable's retail auto parts business constitutes a pre-existing and continuous nonconforming use of their property. Sufficient evidence was adduced at the hearings before the BZA that the property had been utilized as an automobile salvage yard and automobile parts retail business for approximately sixty years before Cohen purchased the property in 2011.

**{¶ 21}** In support of his argument that the scrap metal business is merely an extension of the existing nonconforming use of the property, Cohen relies upon the definition of "junk" in the JTZR. Specifically, Cohen asserts that his scrap metal business is simply another form of junk, and pursuant to the property's prior nonconforming use for the sale of auto parts, it has not substantially altered that use. Rather, Cohen contends that he has merely "complement[ed]" the "same use" and "same business" without changing the nature of the property.

**{¶ 22}** Cohen further relies on two cases in support of his position, *State ex rel. Zoning Inspector v. Honious,* 20 Ohio App.2d 210, 253 N.E.2d 301 (2d Dist.1969), and *Conrad v. Babcock*, 124 Ohio App.3d 667, 707 N.E.2d 44 (11th Dist.1997). Cohen's

reliance on both cases, however, is misplaced. In *Honious*, we held that a junk operator's increase in business, with an increase in the number of junk automobiles on his lot, was not an unlawful extension of his prior nonconforming use, where it did not appear that the area of use had been enlarged. *Id*. In *Conrad*, the Eleventh District Court of Appeals held that the addition of a crematorium to the rear of an existing nonconforming funeral home was permitted because it was an accessory use to a funeral home as broadly defined by the Ohio legislature in R.C. 4717.01(C). 124 Ohio App.3d 667, at 674.

{¶ 23} It is undisputed that no part of the preexisting nonconforming use of the property in question was related to the scrap metal business. To maintain legal nonconforming status, Cohen's use of the property must comport with the MCZR's regulations and the JTZR's prohibition against the extension of nonconforming uses. We note that the JTZR's definition of "junk" encompasses scrap metals and other scrap materials. Additionally, the JTZR's definition of "junk yard" contemplates an establishment that sells "junk." However, because the original nonconforming use of the property was only for the sale of parts of junked automobiles, to extend the nonconforming use to include the purchase of scrap metal is prohibited under the JTZR. Moreover, although Cohen argues that there has been no change to the nature and character of the property from the newly implemented scrap metal business, credible testimony was adduced from nearby property owners and residents regarding the negative impact that Cohen's scrap metal business had on the surrounding area. Specifically, an increase in the theft of scrap metal and scrap materials was reported.

{¶ 24} Therefore, we find that the Jefferson Township BZA's decision upholding

the LNV against Cohen for extending the property's prior nonconforming use into a scrap metal business was reasonable and was supported by a preponderance of substantial, reliable, and probative evidence.  Accordingly, the trial court did not err when it affirmed the BZA's decision upholding the LNV against Cohen.

**{¶ 25}**   Cohen's sole assignment of error is overruled.

**{¶ 26}**   Cohen's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J. concur.

Copies mailed to:

Marty Beyer
Jeffrey C. Turner
Dawn M. Frick
Kevin A. Lantz
Hon. Dennis J. Langer