[Cite as *Copeland v. Hiram Twp.*, 2018-Ohio-5182.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| LAUREEN RUTH MOORE COPELAND, SUCCESSOR TRUSTEE, CLARENCE M. MOORE AND LAURA P. MOORE TRUST, | : | **O P I N I O N** |
| | : | |
| | : | **CASE NO. 2017-P-0044** |
| Appellee/Cross-Appellant, | : | |
| - vs - | : | |
| HIRAM TOWNSHIP, | : | |
| Appellant/Cross-Appellee. | : | |

Appeal from the Portage County Court of Common Pleas, Case No. 2016 CV 01011.

Judgment: Affirmed.

*Darrell Arthur Clay*, *Aimee Weiss Lane*, and *Brendan D. Healy*, Walter Haverfield LLP, The Tower at Erieview, 1301 East Ninth Street, Suite 3500, Cleveland, OH 44114 (For Appellee/Cross-Appellant).

*Victor V. Vigluicci*, Portage County Prosecutor, and *Christopher J. Meduri*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellant/Cross-Appellee).

THOMAS R. WRIGHT, P.J.

{¶1} The Hiram Township Board of Zoning Appeals (BZA) issued a nonconforming use certificate for a private airport in the township to appellee cross-

appellant, Laureen Ruth Moore Copeland, as the successor trustee of the Clarence M. Moore and Laura P. Moore Trust (Moore).

{¶2} The trial court affirmed the issuance of the nonconforming use certificate but modified the attendant conditions. Appellant cross-appellee, Hiram Township (Hiram), appeals to this court and Moore cross-appeals. We affirm.

{¶3} Hiram raises two assigned errors:

{¶4} "[1.] The trial court abused its discretion in holding that ultralight and hang gliding use is a lawful nonconforming use of far view (T.d. 27, Judgment Entry, pg. 5, paragraphs 1 and 2).

{¶5} "[2.] The trial court's holding that reasonable fees may be charged for 'light aircraft' use of the property is against the manifest weight of the evidence and is also an abuse of discretion for the trial court to set aside the BZA's condition that prohibits compensation being paid to use Far View."

{¶6} Moore asserts one assigned error:

{¶7} "The trial court erred in placing conditions on the certificate of nonconforming use, thereby unlawfully restricting Moore's preexisting legal nonconforming use of Far View Airport to fly small aircraft."

{¶8} Moore sought a certificate of nonconforming use for a private airport via its letter of intent to the township dated September 21, 2016. The letter states that the Moore family wants the township to recognize the airport, called Far View Airport, located on the family farm as a prior nonconforming use.

{¶9} The BZA subsequently held a hearing on the matter in September of 2016 at which the Moore's neighbors, township citizens, and others were permitted to testify

2

about the airport and its activities. Notices were sent to the neighboring property owners incorrectly stating that the Moore's were seeking a variance relative to their property.

{¶10} Numerous individuals spoke under oath about their knowledge of the airport's history and gave their opinions about the continued use of the airport.

{¶11} Lavon Moore, son of the late Clarence Moore, testified. Lavon initially pointed out that his family was seeking the certificate of nonconforming use and that they were not asking for a variance nor were they appealing something to the BZA.

{¶12} Lavon confirmed that his father Clarence, who had recently passed away, established Far View Airport in 1948, which was a private airport requiring permission to use. Clarence had a flying club. Far View was first issued a "landing field certificate" in June of 1948 by the State of Ohio and has been listed in the Ohio Airport Directory since 1958.

{¶13} Lavon testified that the airstrip has been continually used since 1948 and that he always mowed the airstrip, which always has a windsock present. Lavon recounted his father occasionally permitting people to land at Far View who were taking their children to Hiram College. Lavon also stated that the Cleveland Browns landed at Far View when they practiced at the college.

{¶14} It is undisputed that Far View was established before Hiram's initial Zoning Resolution was adopted in the 1950s. The airport is located on the Moore family farm, which consists of more than 100 acres and is located in a section of Hiram designated as a Rural Residential District.

{¶15} In May of 2004, Clarence granted an agricultural easement to the Ohio Department of Agriculture. The easement acknowledges the existence of a "small

3

airstrip" as well as an airplane hangar. However, while cited to by both the BZA and the trial court, the actual easement is not in the record before us.

{¶16} A few people testified at the hearing and recall only seeing hang gliders during the past 20 years or so. They described the use of ultralights beginning in approximately 1997. None of the Moore family members testified about when the use of ultralights and hang gliders began at the property.

{¶17} Tom Matata, the township's road supervisor, recalls continuously seeing the airstrip lit up at night since he began working for the township in the late 1970's. He also recalls seeing people landing there with propellers directly on their backs, who had to run down the field to take off.

{¶18} In 1997, the Moore family contracted with a local hang gliding club and allowed them to use the property. This agreement apparently resulted in numerous complaints about the noises from the ultralights, which were required to tow the hang gliders into the air.

{¶19} The BZA approved Moore's application for a nonconforming use but prescribed the following conditions:

{¶20} "1. Only Moore family members by blood, marriage, or adoption shall operate aircraft on Far View Airport.

{¶21} "2. Only engine powered aircraft owned by the Moore family by blood, marriage or adoption can be used. No fractional ownership permitted.

{¶22} "3. Engineless aircraft may be operated by any person provided they are towed or lifted into the air by a Moore family member in a Moore owned aircraft at Far View Airport.

{¶23} "4. There shall be no exchange of money, goods, services, barter or donations in any way to the Far View Airport or the Moore family.

{¶24} "5. These conditions are consistent with and must abide by the terms of the Ohio Agricultural Easement Purchase Program Deed of Agricultural Easement dated November 22, 2004."

{¶25} As stated, Moore appealed the BZA decision to the trial court and argued that the BZA imposed unconstitutional conditions on the use of the airport and that the BZA illegally barred Moore from transferring its nonconforming use to a subsequent owner of the property. The trial court agreed and modified the BZA's decision and affirmed as modified. It affirmed the issuance of the nonconforming use certificate and modified the attendant conditions, explaining in part:

{¶26} "[A]ircraft designated as 'light aircraft' in the Code of Federal Regulations * * * use[d] the Far View Airport on an occasional basis from the time of the airport's inception to the adoption of the Zoning Resolution. [O]ver forty years after the adoption of the Zoning Resolution * * * the use of ultralight aircraft (which are separately classified from conventional aircraft in the Code of Federal Regulations) and hang gliders began at Far View. Likewise, it was not until the use of ultralight aircraft on a large scale at Far View began that neighboring residents began complaining of incessant noise and low-flying aircrafts over their homes. * * * literally hundreds of ultralight and hang gliding flights (which require the use of ultralight crafts to tow them) took place per season * * *.

{¶27} "* * *

{¶28} "* * * the large scale use of the airport for ultralight aircraft and hang gliders cannot be considered a nonconforming use supplanting an already established nonconforming use.

{¶29} "* * * the large scale use of the Far View Airport for ultralight aircraft and hang gliders, which has resulted in complaints of nuisance, did not exist at the time of the adoption of the Zoning Resolution. The large scale use of the airport for ultralight aircraft and hang gliders is inconsistent with the rural residential district in which the airport is located. Accordingly, the Board of Zoning Appeals is permitted to determine said large scale use of the airport for ultralight aircraft and hang gliders as a nuisance and not permissible as a nonconforming use otherwise allowed, and is further permitted to limit the amount of use of the airport for ultralight aircraft and hang gliders.

{¶30} "* * * the decision of the Board of Zoning Appeals to limit the use of the subject property to 'Moore family members * * *' is clearly improper. In turn, * * * for the Board of Zoning Appeals to designate that the property owners cannot receive compensation for the use of the airport by third persons is clearly improper, inasmuch as such a limitation did not exist at the time of the adoption of the Zoning Resolution.

{¶31} "Accordingly, * * * the Court * * * [modifies] said decision in part as follows:

{¶32} "1. Use of the subject property, by the property's current owners or their successors in interest, as an airport for light aircraft, as defined in the Code of Federal Regulations, shall be permitted. Said aircraft may be owned and/or operated by any individual as determined by the property's current owners or their successors in interest;

{¶33} "2. The use of ultralight aircraft and/or hang gliders will be permitted to the extent that no large scale use of the airport for ultralight aircraft and hang gliders, including

6

instruction flights, group flights, or club flights, may take place.  Said ultralight aircraft and/or hang gliders may be owned and/or operated by any individual as determined by the property's current owners or their successors in interest;

{¶34} "3.  Reasonable fees may be charged * * * to users of the subject property as an airport for light aircraft * * *.

{¶35} "4.  All use of the subject property as an airport for light aircraft * * * shall be consistent with and abide by the terms of the Ohio Agricultural Easement Purchase Program Deed of Agricultural Easement relative to the subject property, dated November 22, 2004."

{¶36} Hiram's first assigned error asserts that the trial court abused its discretion in holding that ultralight and hang gliding use is a lawful nonconforming use of the airport. In support, Hiram emphasizes the fact that ultralights and hang gliders were not used on the property before the township's zoning resolution was passed, and as such, these are not prior nonconforming uses.

{¶37} Hiram's second assigned error claims the trial court erred in permitting Moore to charge fees associated with the use of the airport as against the manifest weight of the evidence and an abuse of discretion.

{¶38} Moore, on the other hand, argues that there should be no restrictions on its preexisting and legal nonconforming use of the Far View Airport to fly small aircraft.

{¶39} We review the parties' claimed errors collectively.

{¶40} "The common pleas court considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or

7

unsupported by the preponderance of substantial, reliable, and probative evidence." (Citations omitted.) *Henley v. Youngstown Bd. of Zoning Appeals,* 90 Ohio St.3d 142, 147, 2000-Ohio-493, 735 N.E.2d 433 (2000). The hearing on appeal to the trial court "'resembles a de novo proceeding.'" *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals,* 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶24.

**{¶41}** Contrary to Hiram's arguments, an appellate court reviewing an administrative appeal following an appeal to the trial court does not review for an abuse of discretion. Instead, an appeal from the judgment of the common pleas court is permitted only "on questions of law." R.C. 2506.04; *Marks v. Aurora Bd. of Zoning Appeals,* 11th Dist. Portage No. 2015-P-0049, 2016-Ohio-5183, 69 N.E.3d 216, ¶15, *appeal not allowed,* 148 Ohio St.3d 1443, 2017-Ohio-1427, 72 N.E.3d 657. "[T]he standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance. It permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Cleveland Clinic Found., supra,* at ¶30.

**{¶42}** "The right to continue to use one's property in a lawful business and in a manner which does not constitute a nuisance and which was lawful at the time such business was established is within the protection of Section 1, Article XIV. Amendments, United States Constitution, and Section 16, Article I of the Ohio Constitution, providing that no person shall be deprived of life, liberty or *property* without due process of law." *City of Akron v. Chapman*, 160 Ohio St. 382, 116 N.E.2d 697 (1953), paragraph two of the syllabus.

{¶43} Nonconforming uses are defined and limited by R.C. 519.19 which states in pertinent part:

{¶44} "The lawful use * * * of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with such resolution or amendment * * *. The board of township trustees shall provide in any zoning resolution for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning resolution."

{¶45} Article VII, Section 701, *Intent*, of the Hiram Township Zoning Resolution states in part that the purposes of this section is to "provide for * * * uses of land * * * that were lawful prior to adoption and the effective date of this Zoning Resolution * * * to continue until they are removed, but not generally encourage their survival."

{¶46} Section 701-1(I), *Certificate of Nonconforming Use*, states in part that "[within] one (1) year of the effective date of this Resolution * * *, the Zoning Inspector shall issue a Certificate of Nonconforming Use to all known owners of property, the use of which does not conform to the provisions of the Zoning District in which it is located."

{¶47} Section 701-1(C), *Displacement*, states in part that "no * * * nonconforming use of land [shall] replace another nonconforming use unless the Board of Appeals on appeal, determines that the proposed use is in in less conflict with the character and use of the district and more appropriate than the existing nonconforming use."

{¶48} It is undisputed that the Far View Airport on the Moore property is a prior nonconforming use of the land existing before Hiram enacted its zoning resolution. No one challenges the issuance of the certificate of nonconforming use. Instead, Hiram

9

challenges the trial court's decision to allow Far View to charge reasonable fees for one's use of the airport and its decision to allow the use of ultralight and hang gliders in any manner. Whereas Moore contends there should be no limitations on their use of the property as an airport.

**{¶49}** The use of the property as an airport predated the zoning resolution and the evidence confirms that the property has been used as airport for light aircraft since that time. Although there was no evidence that ultralights and/or hang gliders were used at the property *before* the passage of Hiram's zoning resolution in 1950, the allowance of the same on a small-scale basis is consistent with the historical use of the property as an airport. This is not a case where one activity displaced another one, but instead where the property's use as an airport remained unchanged. The testimony showed that the types of aircraft used at the property varied.

**{¶50}** Consistent with 519.19, the lawful use of the land preexisting and lawful at the time of enactment of Hiram's zoning resolution was the use of property as an airport. The trial court concluded, based on the evidence, that it was not the continued *use* of Far View as an airport that was inconsistent with the use established by Moore before the zoning resolution was enacted. Instead, it was the *frequency* of the use of the airport following Moore's agreement with a local hang gliding club that was inconsistent with the prior nonconforming use of the property. Thus, the trial court acknowledged the scope of the use of the airport *before* the zoning resolution was enacted and limited expansion accordingly. "Efforts to eradicate nonconforming uses, however, are limited to restricting the expansion and substantial alteration of existing nonconforming uses." (Citations omitted.) *Deerfield Twp. v. Deerfield Raceway, L.L.C.,* 11th Dist. Portage No. 2007-P-

0060, 2008-Ohio-4047, ¶30. Contrary to Moore's argument, the trial court did not impermissibly place "conditions" on the nonconforming use of the property.

{¶51} In *Deerfield Twp.*, we reviewed an appeal regarding the nonconforming use relative to a property used as a racing or drag strip that predated the passage of Deerfield Township's Zoning Resolution. Reviewing for plain error, we rejected the argument that racing stock cars constitutes an expansion or substantial alteration of the use of the property from its prior use as a track for racing midget and/or micro midget cars. *Id*. at ¶31. We declined to narrowly construe the nonconforming use and limit the use of the property for racing one type of automobile. Instead, the prior nonconforming use was the use of the property as an auto racing track.

{¶52} Like in *Deerfield Twp.,* the trial court here found that the nonconforming use is Moore's general use of the property as an airport. The fact that the trial court did not restrict the use of the airport to the make and model of planes that Clarence Moore and his friends flew in 1948 does not make its nonconforming use limitation contrary to law or unsupported by the evidence. The trial court's decision to allow small aircraft, hang gliders, and ultralights to use Far View Airport on a "small-scale basis" is supported by the evidence. Moreover, Hiram does not allege that the use of the property in this manner constitutes a nuisance. Thus, Hiram's first assigned error and Moore's sole assigned error lack merit.

{¶53} As for Hiram's second assigned error, we agree that there is no evidence that Far View Airport charged fees for the use of its airport in 1948 before Hiram's zoning resolution was enacted. Notwithstanding, the charging of fees is consistent with the use of a property as an airport and is incidental to the ownership and use of the property as a

11

private airport that does not substantially alter the existing nonconforming use. *Deerfield Twp.,* at ¶30. Thus, the trial court's decision in this regard does not constitute an error of law, and Hiram's second assigned error lacks merit.

{¶54} The trial court's decision is affirmed.


CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.